**Vera L. NUNES, Plaintiff,**

v.

**WAL–MART STORES, INC.;
Mike Black; and Rita
Silva, Defendants.**

**No. C 96–3342(JSB) MED.**

United States District Court,
N.D. California.

Sept. 24, 1997.

MaryClare Lawrence, Susan K. Amato, Conner, Slabach, Lawrence & Rodney, Santa Rosa, CA, for Plaintiff.

David F. Faustman, Jason L. Hoffman, Faustman, Carlton, DiSante & Freudenberger, San Francisco, CA, for Defendants.

### Order Granting Defendants Motion for Summary Judgment

BRENNAN, United States Magistrate Judge.

### Background

The plaintiff, Vera Nunes ("Nunes"), was fired from her sales associate position at the Ukiah, California Wal–Mart Store ("Wal–Mart") on October 27, 1995. For many years, including those in question here, plaintiff has suffered from syncopal episodes causing her to black out and lose consciousness on many occasions. Nunes first blacked out at work in the early part of 1994. (Nunes' Chronology, Defendants' Exh. 7). Thereafter, she continued to suffer blackouts, causing her to miss work from June 10, 1994 through August 5, 1994. (*Id.*). After returning to work at Wal-Mart, plaintiff suffered several more on-the-job blackouts in February and March of 1995. (*Id.*). On March 3, 1995, plaintiff went on extended medical leave and never returned to work at Wal–Mart. (Nunes depo., p. 45:4–12).

During her medical leave period from March 3, 1995 until her termination by Wal–Mart on October 27, 1995, Nunes was under the medical supervision of several different doctors who provided documentary proof of her illness to the Wal–Mart management. (Nunes depo., pp. 68:20–69:6). While on leave Nunes suffered sixteen more blackouts. Plaintiff's doctors continued to issue letters to Wal–Mart on a bi-monthly basis, indicating plaintiff's inability to return to work. (Defendants' Exh. 7). Early on in her medical leave period, Nunes signed off on Wal–Mart's Leave of Absence Checklist, acknowledging that she received and reviewed all of Wal–Mart's leave requirements. (Defendants' Exh. 21; Nunes depo., p. 59:1–9). Nunes submitted two Wal–Mart Request for Leave of Absence forms ("Request forms"). (Defendants' Exhs. 14 & 15). During her leave, from March of 1995 until November 14, 1995, plaintiff received state disability insurance benefits. (Defendants' Exh. 29).

On October 27, 1997, Rita Silva ("Silva"), a Wal–Mart manager, informed the store manager, Mike Black ("Black"), that Nunes had failed to submit a Request Form since the expiration of the last Request Form on July 12, and that Nunes could not be located (Nunes had moved and failed to inform her supervisors at Wal–Mart of her new address

and telephone number).[1] (Silva depo., p. 8:18–22). Black reviewed the doctors' notes in Nunes' file at the time, describing her as totally disabled and unable to work through at least December of 1995, and decided that plaintiff must be terminated to accommodate the contingent of employees being hired for the holiday season. (Black depo., p. 25:1–11). A termination letter was sent to Nunes' last known address. (Silva depo., p. 26:13–15). On November 3, 1995, Nunes came to the store and received $272.07 in cash as her final exit pay, signing the cash log next to the box marked "Exit Vera Nunes."[2] (Defendants' Exh. 26).

On November 16, 1995 Nunes returned to Wal–Mart to shop and attempted to use her employee discount card. (Nunes depo., p. 66:15–22). The cashier refused the card and Silva was called to discuss the situation with Nunes. (*Id.*). Silva and another manager explained to Nunes that she had been terminated because she had not submitted a new Request Form, could not be located, and that her position had been filled by a seasonal employee. (Exit interview, defendants' Exh. 27). Nunes was told that she could reapply after the holiday season, but she never did. (Nunes depo., pp. 71:14–17; 73:23; 81:16–23).

Plaintiff filed her complaint on September 13, 1996 alleging twelve different causes of action against Wal–Mart, Mike Black, and Rita Silva as follows:

1. Violation of the Americans with Disabilities Act ("ADA");

2. Violation of the Family and Medical Leave Act ("FMLA") and the California Family Rights Act ("CFRA");

3. Violation of the California Fair Employment and Housing Act ("FEHA");

4. Negligent Failure to prevent discrimination and harassment in employment;

5. Wrongful termination in violation of public policy;

6. Employment discrimination based on retaliation;

7. Negligent failure to prevent retaliation;

8. Intentional infliction of emotional distress;

9. Negligent infliction of emotional distress;

10. Negligent failure to properly supervise employees;

11. Violation of California constitutional rights;

12. Defamation.

Plaintiff asserts that all of these causes of action arise from, or relate to, her termination from Wal–Mart due to her disability.

## This Motion

Defendants filed their motion for summary judgment on August 7, 1997. Their motion asserts that there is no evidence to support any of plaintiff's claims. Defendants believe that all twelve causes of action should be dismissed by this court.

Summary judgment is properly granted when no genuine and disputed issues of material fact remain or, when viewing the evidence most favorably to the non-moving party, the movant clearly is entitled to prevail as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Eisenberg v. Insurance Co. of N. Am.,* 815 F.2d 1285, 1288–89 (9th Cir.1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

---

1. Silva tried to reach Nunes by telephone, but the line had been disconnected; Silva eventually reached Nunes' boyfriend's mother, who informed Silva that Nunes was in the hospital.

2. Nunes asserts that when she signed the cash log the box marked "Exit Vera Nunes" was blank. Nunes believed that she was still a Wal–Mart employee and was merely picking up her accrued vacation pay.

Summary judgment is not necessarily defeated by the existence of any dispute whatsoever; to prevent summary judgment, the dispute must raise *genuine* issues of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue is one supported by specific facts which would permit a reasonable jury to return a verdict for the nonmoving party, while material facts are those which would affect the outcome of the action. *Id.* When a party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial, there can be "no genuine issue of material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U .S. at 323, 106 S.Ct. at 2552.

## I. Americans with Disabilities Act

### A. Standard of Review under the ADA

To survive summary judgment under the ADA, a plaintiff must establish by a preponderance of the evidence a prima facie case of disability discrimination by showing:

> (1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified, that is, with or without reasonable accommodation he is able to perform the essential functions of the job; and (3) that the employer terminated him because of his disability.

*Kennedy v. Applause, Inc.,* 90 F.3d 1477, 1481 (9th Cir.1996) (court affirmed summary judgment because the former employee was totally disabled and could not have returned to work); *citing White v. York Int'l. Corp.,* 45 F.3d 357, 360–61 (10th Cir.1995). Wal–Mart has borne its burden of showing that plaintiff cannot adequately establish the elements of a prima facie case of discrimination. Defendants do not dispute that plaintiff was suffering from a recognized disability, regarded as suffering from a disability, and/or

possessed a record of disability. It is with regard to the second element of the prima facie case, qualification, that defendants challenge plaintiff's case.

### B. Plaintiff's Qualification under the ADA

■ Wal–Mart claims that Nunes was not a "qualified individual with a disability," and therefore cannot establish the second element of the prima facie case. A "qualified individual with a disability" is defined as "an individual with a disability, who with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires at the time of the employment decision." 42 U.S.C.A. § 12111(8); 29 C.F.R. § 1630.2(m). "Essential functions" are "those functions that the individual must be able to perform unaided or with the assistance of a reasonable accommodation." 29 C.F.R. § 1630.2(n). An individual with a disability who needs time off from work may be a qualified individual with a disability if the requested leave would allow the individual to perform the essential functions of her employment when the leave is over. 29 C.F.R. § 1630.2(o). Nunes has not produced adequate evidence to prove that she was a qualified individual able to perform the essential functions of her employment.

#### 1. Plaintiff was not released to return to work prior to her termination.

■ Plaintiff's doctors indicated that at no time prior to her termination on October 27, 1995 was Nunes able to work at all, let alone perform the essential functions of her position at Wal–Mart. (Walker Note, Defendants' Exh. 28). Wal–Mart received several notes from several different doctors, each indicating a different possible return date for Nunes.[3] None of the doctors' notes indicates that Nunes was able to perform the essential functions of her job on the date of her termination.[4] In fact, Nunes' doctors certified her

---

3. Dr. Cox's October 31st note stated that Nunes was unable to return to work until November 15, 1995. Another note, from Dr. DeCrona, certifies that Nunes was unable to work from August 1, 1995 through December 1, 1995.

4. Wal–Mart's reliance on the medical certifications of these doctors in deciding to terminate the plaintiff is supported by case law. *See Cook v. U.S. Dept. of Labor,* 688 F.2d 669, 671 (9th Cir.1982) (in deciding to discharge plaintiff, em-

as totally disabled at the time of her termination. When an employee is found to be totally disabled, the essential functions of the position become irrelevant. *Kennedy,* 90 F.3d at 1481. Being totally disabled, the employee is not able to perform the job no matter what its essential functions are. *Id.* Accordingly, because Nunes was totally disabled she was not qualified under the ADA as she could not perform the essential functions of her position.

### 2. Plaintiff posed a "direct threat" to the health and safety of herself and others.

■ When deciding to terminate Nunes, Wal–Mart concluded that plaintiff could not return to work in the near future and that, even if she could, she would pose a "direct threat" to the safety of herself and others. An individual is not qualified if she poses a "direct threat" to the health or safety of other individuals in the workplace. 42 U.S.C. § 12113(b). A "direct threat" means a "significant risk to the health and safety of others that cannot be eliminated by reasonable accommodation." *Id.* In analyzing whether someone poses a direct threat, the employer should consider the likelihood that the potential harm will occur, and the imminence of the potential harm. 29 C.F.R. § 1630.2(r).

The record shows that Nunes has suffered from "drop attacks" while at work, at least one of which caused her to require stitches after falling onto a clothing rack. (Defendants' Exh. 12). Wal–Mart asserts a legitimate fear that plaintiff was a "direct threat" to the safety of herself and others. In his deposition, Dr. Walker, indicated that if his patient returned to work she would pose a threat to herself and others, indicating that it was possible Nunes could have hurt herself or others if she suffered an attack while carrying something heavy. (Walker depo., pp. 35:11–36:7). Accordingly, since Nunes would have posed a "direct threat" to the health and safety of Wal–Mart's customers she was not a "qualified individual with a disability" under the ADA.

ployer was justified in relying on plaintiff's medi-

### 3. Nunes' inconsistent statements preclude her from claiming that she was qualified.

■ Nunes must be precluded from claiming that she was "qualified" under the ADA because she made inconsistent remarks when she applied for and received state disability insurance benefits. In *Kennedy,* plaintiff's statements on state and federal disability benefit forms that she was completely disabled for all work-related purposes precluded her from claiming that she was a "qualified individual with a disability" for the purposes of her ADA cause of action. *Kennedy,* 90 F.3d at 1481; *see also Rissetto v. Plumbers and Steamfitters Local 343,* 94 F.3d 597 (9th Cir.1996) (to prevent plaintiff from playing "fast and loose" with the courts, the court applied the doctrine of judicial estoppel). Nunes cannot dispute that from March 7, 1995 through at least November 14, 1995 she was collecting state disability insurance for total disability. (Disability Insurance Notice, Defendants Exh. 29). Nunes is precluded from claiming that she was simultaneously "qualified" under federal law, while also claiming to be completely disabled so as to collect disability insurance.

Nunes was a disabled person within the meaning of that term under the ADA, however, she cannot prove the second element of the prima facie case, qualification. Accordingly, defendants' summary judgment motion under the ADA must be granted as plaintiff cannot establish her prima facie case of discrimination under the ADA.

### II. Family Medical Leave Act

■ Wal–Mart complied with the provisions of the federal Family and Medical Leave Act. Federal law allows eligible employees up to twelve weeks of medical leave for serious health conditions if such a condition renders the employee unable to work. 29 U.S.C. § 2612(a)(1)(D); 29 C.F.R. § 825.112(a)(4). If the employee does not provide a fitness-for-duty certification or a new medical certification for a serious health condition at the time the FMLA leave is concluded, the employer may terminate the employee. 29 C.F.R. § 825.311(c).

cal records).

On June 13, 1995, Nunes completed and submitted a Request Form in accordance with FMLA and Wal–Mart's leave of absence policy. (Defendants' Exh. 14). Accordingly, Nunes' FMLA leave commenced on June 13, 1995, and expired twelve weeks later. According to federal law, Wal–Mart's obligation to hold open Nunes' position continues for twelve weeks; after this period, the employer has no legal obligation to hold an employee's position open. Wal–Mart was properly asserting its right to terminate Nunes when she failed to return to work at the close of the twelve-week period ready to work and with the requisite certification of her fitness for duty.

There is no case law in this area, nor does the statute's legislative history speak as to the consequences of an employee's position if he or she fails to return to work after using the maximum leave. Common sense dictates that since the statute states that an employer must hold open an employee's position for twelve weeks during his or her leave of absence, that is exactly what the employer must do and no more. Wal–Mart held Nunes' position until October 27, 1995 before terminating her, six weeks beyond the twelve-week maximum.

Moreover, plaintiff failed to respond to defendants' argument on this issue in her opposition brief. Nunes has thus failed to show that there is any material issue of fact with regard to the FMLA claim. Accordingly, summary judgment on the FMLA claim is proper.

### III. The Remaining State Law Claims

Under Title 28 United States Code section 1367(a) federal courts may exercise supplemental jurisdiction over state claims "that are so related" to the federal claims which are properly brought before the court that they should proceed in federal court. Such "pendent" jurisdiction allows a federal court to entertain a state claim over which it would otherwise lack subject matter jurisdiction by virtue of the fact that the claims arise out of the same event or connected series of events. 28 U.S.C. § 1367, Practice Commentary. The district court may, however, decline to exercise supplemental jurisdiction over a claim under subsection (a) if "the district court has dismissed all claims over which it [had] original jurisdiction." 28 U.S.C. § 1367(c)(3). Most case authority indicates that retention of the state law claims after dismissal of all federal claims is "fully discretionary". *See Schneider v. TRW, Inc.*, 938 F.2d 986, 993–94 (9th Cir.1991). Other cases go even further, stating that it is an abuse of discretion to retain supplemental jurisdiction unless "extraordinary" or "unusual" circumstances justify their retention. *See Reynolds v. County of San Diego*, 84 F.3d 1162, 1171 (9th Cir.1996). Accordingly, since this court grants the defendants' motion for summary judgment on the two federal claims, the ADA and FMLA, the ten remaining state law claims are dismissed without prejudice to their re-filing in state court.

**IT IS SO ORDERED.**