David WATKINS, Plaintiff, Appellee,

v.

J & S OIL COMPANY, INC.,
Defendant, Appellant.

David Watkins, Plaintiff, Appellant,

v.

J & S Oil Company, Inc.,
Defendant, Appellee.

Nos. 98–1002, 98–1003.

United States Court of Appeals,
First Circuit.

Heard July 29, 1998.

Decided Dec. 30, 1998.

Joseph J. Hahn, with whom Kate S. Debevoise, Glenn Israel and Bernstein, Shur, Sawyer & Nelson were on brief, for J & S Oil Company, Inc.

Cynthia L. Amara and New England Legal Foundation on brief for the Maine Chamber and Business Alliance and the New England Legal Foundation, amici curiae.

Francis M. Jackson, with whom Jackson & MacNichol was on brief, for David Watkins.

Before TORRUELLA, Chief Judge, WELLFORD,* Senior Circuit Judge, and LYNCH, Circuit Judge.

WELLFORD, Senior Circuit Judge.

Plaintiff David Watkins was employed as a gas station manager for defendant J & S Oil Co., Inc. ("J & S"). In August of 1994, he suffered a heart attack and subsequently had open heart surgery. After he had been home on leave for about two weeks recuperating from surgery, J & S called Watkins, asked him whether he intended to return to work, and informed him that he had been replaced in his position as station manager. After Watkins had completed the leave,

---

* Of the Sixth Circuit, sitting by designation.

claimed under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq.,* he did not return to work for J & S in any capacity. Watkins sued J & S pursuant to the FMLA and also the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.,* as well as under state law for infliction of emotional distress. The district court granted J & S's motion for summary judgment on both the ADA and the state law claims, but denied the motion with respect to Watkins's FMLA claim. The FMLA claim was tried to a jury, which found in favor of Watkins. J & S now appeals the district court's denial of its motion for summary judgment and its motion to vacate that judgment. Watkins appeals the district court's granting of J & S's motion for summary judgment on the ADA and state law claims.

At all pertinent times, J & S operated three gas stations in Maine. J & S hired Watkins in 1992 as a gas attendant at its Farmingdale station, although Watkins had informed J & S that he had previously experienced a heart attack.[1] In August of 1993, J & S promoted Watkins to station manager. During July of 1994, however, Watkins had another heart attack which caused him to be out of work for about five weeks. Despite the second heart attack, he returned to work with no restrictions. On September 17, 1994, Watkins suffered still another heart attack and subsequently underwent surgery for his condition.

On October 3, 1994, while Watkins was on leave recuperating from surgery, the Human Resources Officer for J & S, Wade Look, called Watkins regarding whether and when Watkins intended to return to work. Watkins testified as follows about that conversation (in part):

Q. Okay. So he asked you, are you planning to return to J & S Oil. What did you say to him?

WATKINS: Do I still have a position as store manager.

Q. Okay. And what was his response?

WATKINS: No, you don't.

Q. Okay. Then what.

WATKINS: He said, you have been replaced.

Q. Okay. As store manager?

WATKINS: Yes, sir.

Q. All right. So still you have the question hanging, do you plan to return to J & S. What was your answer to that?

WATKINS: I asked him again if my job as store manager was available.

Q. Okay. And he said?

WATKINS: No.

Q. So what did you say?

WATKINS: I asked him what he expected me to do at this point in time as far as—as work, and he said that in order to return that he was not going to accept a doctor's note, that they would only speak to the doctor personally, and that would be the only way they would let me return.

At the time of that conversation, Watkins did not, in fact, know when he would physically be able to return to work.

Later in October, Watkins was examined by his doctor, but he could not recall what the doctor had told him regarding his ability to return to work. About a month after the third attack, Look again called Watkins to ask how he was feeling and whether he intended to return to J & S. Watkins asked again whether his position as store manager was available, and Look indicated that it was not, and Watkins testified as to the following conversation:

Q. Did you ask him what jobs there were available for you at J & S?

WATKINS: No.

Q. All right. Did he tell you what jobs were available to you at J & S?

WATKINS: He mentioned that there would be an office job that I could bid on but was not a guarantee that I would get the job.

Q. And what was that job?

WATKINS: I have no idea.

Q. Did that interest you at all?

WATKINS: Yes.

Q. So did you ask him what the job was?

WATKINS: No.

1. *See* Watkins's affidavit in support of his motion for summary judgment.

Q. Why not?

WATKINS: Because he wasn't sure what the position exactly was. There was no job description, according to him, at that particular point in time.

Q. So tell me what you asked him and what he told you about that job. . . .

WATKINS: That they were expanding and that there would be a job available in the office and I would be able to bid on it.

Q. Did you ever bid on it?

WATKINS: No, sir.

Q. Is there a reason why you didn't bid on it?

WATKINS: It never came available between that conversation and November 7th.

Q. Did you explore that job with him at any time?

WATKINS: No.

Q. Did you ever discuss it again other than that two or three little sentences you just described?

WATKINS: No, sir.

Q. Did he discuss any other jobs with you?

WATKINS: Yes.

Q. What other jobs . . . on this telephone call? . . .

WATKINS: He said that there was a possibility but no guarantees that he might be able to put me as a gas attendant on third shift in Winslow.

Q. Okay. Did he say anything to you about your salary?

WATKINS: I asked him was it going to be at the same rate of pay and he said no.

Q. Okay. This was what, the Winslow job or the office job?

WATKINS: The Winslow job.

Q. What about the office job?

WATKINS: Nothing ever was discussed again.

On November 7, 1994, Look called Watkins a third and final time to notify Watkins that the company would no longer pay for his insurance because his leave had then expired, and also to find out whether Watkins was planning to go back to work.[2] Watkins again asked if his store manager job was available, and Look informed him that it was not. At that point, Watkins said, "I think we're going to part company." Watkins's position at that point was that he wanted the store manager position or nothing; Watkins stated that he had decided not to accept any job other than that of store manager.

## I. FAMILY AND MEDICAL LEAVE ACT CLAIM

As indicated above, the district court denied J & S's motion for summary judgment on the FMLA claim. Also, the court denied J & S's motion for a judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a) which was made during the trial. The jury then returned a verdict in Watkins's favor for $43,-000, the stipulated amount of damages. J & S filed a timely motion to vacate the judgment on this verdict pursuant to Fed.R.Civ.P. 59(e), which was also denied. On appeal, J & S claims that the district court erred in failing to grant summary judgment on the FMLA claim and in failing to grant its motion to vacate the final judgment.[3]

As stated above, the district court defeated all of J & S's attempts for a favorable decision on the FMLA claim. J & S failed to renew its motion for a judgment as a matter of law at the close of proof, so the denial of that motion is not properly before the court. *Simon v. Navon*, 71 F.3d 9, 13 (1st Cir.1995). Since the case proceeded to trial, denial of the defendant's motion for summary judgment will not be separately addressed. *Lama v. Borras*, 16 F.3d 473, 476 n. 5 (1st Cir.1994). We shall review the district court's denial of the motion to vacate the judgment, following the jury verdict, for an abuse of discretion. *Simon*, 71 F.3d at 13

---

2. Watkins claimed that one week taken after his second attack was for vacation time, but the parties stipulated that he took twelve weeks FMLA leave between July 5, 1994, and November 6, 1994.

3. Several amicus curiae briefs were filed in support of the position of J & S. We do not address separately the arguments in the amicus briefs, which are similar to those raised by J & S.

(citing *Sanchez v. Puerto Rico Oil Co.*, 37 F.3d 712, 717 (1st Cir.1994)).

Pursuant to the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period ... [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Any employee who takes such a leave "shall be entitled, on return from such leave—(A) to be restored by the employer to the [previous] position ... or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(A), (B); *see also Patterson v. Alltel Information Services, Inc.*, 919 F.Supp. 500, 504 (D.Me.1996).

■ In order to establish a *prima facie* case for a FMLA violation, a plaintiff must show that (1) he is protected under the Act; (2) he suffered an adverse employment decision; and (3) either he was treated less favorably than an employee who had not requested FMLA leave or the adverse decision was made because of his request for leave. *Oswalt v. Sara Lee Corp.*, 889 F.Supp. 253, 259 (N.D.Miss.1995), *aff'd*, 74 F.3d 91 (5th Cir.1996); *see also Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 712 (7th Cir. 1997) (discussing the appropriate burden-shifting in claims brought pursuant to the FMLA). It is undisputed that Watkins was an eligible employee.

■ The district court held that hiring someone to replace Watkins in his former position as station manager did not, in and of itself, "constitute an adverse employment decision" under FMLA. We agree that J & S was not required under the FMLA to return Watkins to his former management position, which Watkins conceded was a strenuous job that required at least a fifty-two hour week. *See Brown v. J.C. Penney Corp.*, 924 F.Supp. 1158 (S.D.Fla.1996); 29 C.F.R. § 825.214. J & S was required, however, to afford him equivalent work and compensation under the Act. We construe the "equivalent" requirement to mean that which is substantially equal or similar, not necessarily identical or exactly the same. The employer may take into account the employee's physical capabilities in determining the equivalent work and compensation involved.

Watkins, at the outset, based on his own testimony, wanted and reiterated his desire to return to his job as store manager, but he was told that J & S planned to replace him due to the pressures and needs of J & S's small business operation. There were non-specific discussions about other positions and when and if Watkins was able to return to work. Watkins asked what J & S expected him to do in light of the fact that his old position was no longer available. J & S raised the possibilities of a potential office job (that apparently never became available) or a lesser paying gas attendant job. Neither job, however, was actually offered to Watkins, and it is questionable whether either job was an "equivalent" position for purposes of satisfying the FMLA. As indicated above, the district court found that the question of whether Watkins was offered an equivalent position, giving Watkins the benefit of the most favorable view of conflicting evidence, required a jury determination.

■ The district court properly instructed the jury that Watkins had the burden of proving his case. *See Kaylor v. Fannin Regional Hospital*, 946 F.Supp. 988, 1000 (N.D.Ga.1996). The court then required Watkins to prove by a preponderance of the evidence *each* of the following conditions:

1. That J & S failed to provide an equivalent position with equivalent pay and benefits at the end of the twelve-week period, using a "substantially equivalent" definition.

2. "[T]hat Watkins was physically able to perform essential functions of ... an equivalent position ... at the end of the twelve-week period."

3. That Watkins "did not voluntarily resign."

4. That Watkins did not prevent J & S from carrying out its FMLA obligations by his own "actions or inactions."

J & S moved to vacate the verdict under Rule 59(e) on two grounds. It argued that it

could not, as a matter of law, be required to reinstate Watkins because (1) he failed to "return from [FMLA] leave," as required under 29 U.S.C. § 2614(a)(1), and (2) he "unequivocally advise[d][J & S] ... that [he][did] not intend to work" and thus was no longer eligible for reinstatement under 29 C.F.R. § 825.312(e).

■ We address the latter argument first. Although J & S styled its motion as one based on "a manifest error of law," it is clear that the jury's verdict was not based on the erroneous proposition that an employer is obligated under the FMLA to offer reinstatement to an employee who has resigned. Whether Watkins voluntarily resigned was a question of fact that the jury was expressly asked to resolve. The jury apparently found that, under the circumstances, Watkins's statement, "I think we're going to part company," was not equivalent to a voluntary resignation but rather his recognition that J & S refused to offer him reinstatement to an equivalent position. Although reasonable minds could certainly differ, that finding was supported by sufficient evidence. We conclude that the district court did not abuse its discretion in refusing to vacate the verdict on this ground. *See Lama*, 16 F.3d at 477.

■ J & S's other argument is equally unavailing. In essence, it asks the court to impose a per se rule that an employee is not eligible for reinstatement unless he or she reports in person to the employer's place of business at the end of the leave period. Nothing in the FMLA supports such a rule. Section 2614(a)(1) merely provides that an employee is entitled to reinstatement to the same or an equivalent position "on return from [FMLA] leave," without defining this phrase further. *See* 29 U.S.C. § 2614(a)(1).

A Department of Labor regulation addressing the question "What notice may an employer require regarding an employee's return to work?" does provide some guidance. *See* 29 C.F.R. § 825.309. Section 825.309 explains that "an employer may require an employee on FMLA leave to report periodically on the employee's status and intent to return to work" and that "[FMLA] obligations continue if an employee indicates that he or she may be unable to work but

expresses a continuing desire to do so." *Id.* A per se rule requiring employees to show up on the employer's doorstep in order to be eligible for reinstatement would be contrary to the spirit, if not the letter, of this regulation.

The two cases cited by J & S do not constitute authority to the contrary. In *Lacoparra v. Pergament Home Centers*, 982 F.Supp. 213 (S.D.N.Y.1997), the court held that an employee who "never contacted her employer about reinstatement" was not entitled to reinstatement. *Id.* at 221. Similarly, the court in *Nunes v. Wal–Mart Stores*, 980 F.Supp. 1336 (N.D.Cal.1997), found that an employer had no obligation to reinstate an employee who failed to submit a required leave form and did not stay in contact with her employer (or even permit her employer to stay in contact with her, since she changed her address and phone number without informing the employer). Neither *Lacoparra* nor *Nunes* imposed a per se rule that an employee can only "return from leave" by physically presenting himself or herself at the employer's place of business, and we decline to impose one here.

J & S's suggestion does direct our attention to an uncertain area of FMLA law, namely, who bears the burden of initiating contact: does the employer have an affirmative obligation to contact the employee in order to ascertain the employee's intentions and to offer the employee reinstatement, or does the employee (even in the absence of specific directives from the employer pursuant to 29 C.F.R. § 825.309) have a duty to contact the employer to seek reinstatement? This is a different question than whether the employee must physically return to the workplace, and one we need not decide here, because it was undisputed that Watkins and J & S were in contact at the end of Watkins's leave period, by virtue of the November 7th phone call.

■ The fact question left for the jury was whether Watkins had "returned from leave" at the time of this phone call and was therefore eligible for reinstatement. The district court broke down this question into three component questions: (1) whether

Watkins "was physically able to perform essential functions of . . . an equivalent position . . . at the end of the twelve-week period," (2) whether he "did not voluntarily resign," and (3) whether he did not prevent J & S from carrying out its FMLA obligations by his own "actions or inactions." The jury answered each of these questions in the affirmative, and there was sufficient evidence to support its conclusions. Thus, we find that the district court did not abuse its discretion in refusing to vacate the verdict based on the argument that Watkins had failed to "return from leave" under 29 U.S.C. § 2614(a)(1).[4]

## II. WATKINS'S MOTION FOR SUMMARY JUDGMENT

### A. ADA Claim

The district court made the following findings with respect to the ADA claim:

1. Plaintiff did not provide J & S with adequate medical certification regarding his condition and ability to return to work within the meaning of ADA requirements.

2. J & S made offers of other positions and was not required, for business reasons, to hold the vacant position open for Watkins. The employer was not required to wait indefinitely for plaintiff to show his ability to work in his old job or in any comparable positions.

3. Reasonable accommodation does not require leaving a position open or filling it temporarily when an employer offers uncontradicted evidence of the importance of such a position to its business, especially when the employer has no way of knowing when, or even

if, the employee will return to work. *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1187–88 (6th Cir. 1996).

4. Plaintiff, in failing to provide his employer with any information regarding his ability to return, demands what certainly amounts to "indefinite leave." Such an accommodation is not required by the ADA.

. . .

Defendant has presented a legitimate nondiscriminatory reason for replacing Plaintiff. Plaintiff has presented no evidence that Defendant's reason was merely a pretext for illegal discrimination. Accordingly, Defendant's Motion for Summary Judgment as to the ADA claim is granted.

Watkins argues that J & S failed to reasonably accommodate him by refusing to hold open his position as station manager until his return from leave. The district court found that there was "no direct evidence of discrimination" under the Act, and that J & S was not required to hold the managerial position open for an indefinite amount of time. The district court determined that Watkins failed adequately to show that on the date of his replacement that he was able "to return to work" or "to perform the essential functions of his job without reasonable accommodation." The court recognized that under some circumstances an employer may be required to hold a position open for some duration as a "reasonable accommodation," but when the employee's absence poses an undue hardship on the employer, then leaving the position open

---

4. J & S also argues on appeal that it was not obligated to reinstate Watkins because he failed to supply medical documentation to prove that he was fit to return to work. Because J & S failed to even allude to this argument in its Rule 59(e) motion, it must be considered waived. *See McCoy v. M.I.T.*, 950 F.2d 13, 22 (1st Cir.1991) (noting that "[i]t is hornbook law that theories not raised squarely in the district court cannot be surfaced for the first time on appeal").

Even if the argument were not waived, it would fail on the merits. The FMLA provides that employers may require medical certifications as a condition for reinstating employees, but only if the requirement is a uniformly applied employer policy. *See* 29 U.S.C. § 2614(a)(4). The regulations provide further that "fitness-for-duty" certificates may only be required if employees are given notice of the need to provide such certificates. *See* 29 C.F.R. §§ 825.301, 310. Whether J & S had such a uniformly applied policy, whether it gave proper notice to Watkins of his obligations under that policy, and whether then Watkins failed to meet those obligations were questions of fact for the jury. Because there was sufficient evidence to support the jury's answers to these questions, the district court would not have abused its discretion if it refused to overturn the verdict on this ground.

would not be considered to be "reasonable." Finally, the district judge determined that Watkins "never informed [J & S] as to when he might be able to return or what accommodations he might require"; in effect, he concluded that Watkins never made a specific reasonable accommodation request for purposes of the ADA. The court concluded, furthermore, that the J & S was not advised with sufficient specificity that in the "immediate future," Watkins would be able to resume his job or an equivalent position, citing *Myers v. Hose*, 50 F.3d 278, 282 (4th Cir. 1995). In sum, J & S was not required, for ADA purposes, to provide accommodation to Watkins for what amounted to an "indefinite leave." *See Monette v. Electronic Data Systems*, 90 F.3d 1173, 1187–88 (6th Cir.1996); *Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir.1996); *Hudson v. MCI Telecommunications*, 87 F.3d 1167, 1169 (10th Cir.1996).

 Watkins argues in his brief that job termination alone involves such psychological stress that he has presented a case for jury determination. He cites no case in support of that proposition. Watkins complains that other than his FMLA damages he is left without a remedy. We impose no further requirement on the employer, under the circumstances of this case, to afford additional accommodation to Watkins whose ability to return to service when he was replaced was, at best, indefinite.

The difficulty in this case is allowing the recovery of substantial damages under the FMLA based on the jury verdict, while at the same time affirming the summary judgment in favor of J & S on Watkins's ADA claim. We agree with the district court that while these causes of action may interrelate, they involve separate and distinct statutory claims. There is a paucity of authority on the FMLA, and we have concluded that material factual controversies existed for a factfinder to decide. We concede particular difficulty with the jury finding that Watkins was able to perform the essential functions of an equivalent position in early November, 1994. We resolve the difficulty by giving Watkins the benefit of doubt and leaving this issue within the province of the jury. The

parties' burdens are different under the two statutory schemes. Under the FMLA, J & S was responsible for restoring Watkins to an equivalent position when his leave expired. The evidence supported the jury's determination that it failed in that duty. However, under the ADA, Watkins was obligated to request a reasonable accommodation. The district court found, as a matter of law, that Watkins's request that J & S leave his original position open for an indefinite amount of time was unreasonable. We affirm both the jury's verdict and the district court's decision on those ADA claims.

## B. *Emotional Distress Claim*

 There is a heavy burden cast upon Watkins on his claim for emotional distress under Maine law. He must demonstrate that he suffered severe stress and that the action of J & S was outrageous in nature. *See Barnes v. Zappia* 658 A.2d 1086 (Me. 1995); *see also Dewilde v. Guy Gannett Publishing Co.*, 797 F.Supp. 55, 63 (D.Me.1992). We find no error in the determination by the district court that Watkins failed to meet this difficult standard under the circumstances of this case. We have affirmed the grant of summary judgment on the ADA claim for the reasons indicated. The emotional distress claim is interrelated with the ADA claim with respect to the termination. We affirm the judgment on count three.

## III. CONCLUSION

For the reasons stated, we affirm the FMLA jury award and judgment. We affirm also the district court's grant of summary judgment in favor of J & S on the ADA claim and the extreme emotional distress claim.