John J. FIUMARA, Plaintiff,

v.

**PRESIDENT AND FELLOWS OF HARVARD COLLEGE d/b/a Harvard University, Defendant.**

**Civil Action No. 05–12105–NMG.**

United States District Court,
D. Massachusetts.

Nov. 26, 2007.

Jeffrey R. Mazer, Law Offices of Jeffrey R. Mazer, Lynnfield, MA, for Plaintiff.

Daniel S. Field, Robert P. Joy, Morgan, Brown & Joy LLP, Boston, MA, for Defendant.

## MEMORANDUM & ORDER

GORTON, District Judge.

The instant action arises out of an employment dispute. The plaintiff, John J. Fiumara ("Fiumara"), seeks damages from his former employer for violations of Massachusetts General Laws Chapter 151B

("Chapter 151B"), breach of contract and violations of 42 U.S.C. § 12112, the Americans with Disabilities Act ("ADA") among other claims. The defendant has filed a motion for summary judgment on all seven counts and a motion to strike Fiumara's memorandum in opposition to the motion for summary judgment.

## I. Background

### A. Factual Background

Fiumara was hired by the defendant, President and Fellows of Harvard College ("Harvard") as a bus driver on October 28, 2002. He remained employed by Harvard until January 5, 2004. From October, 2002 until January, 2003, Fiumara worked part time and on a temporary basis as a "casual" bus driver. The position required that Fiumara drive shuttle buses, vans and a 40–passenger bus with air brakes. The position also required that Fiumara have a Commercial Driver's License ("CDL"), which requires the licensee to maintain United States Department of Transportation ("DOT") certification. A driver must have a CDL to operate the passenger bus but a CDL is not required to operate the van or shuttle buses.

In January, 2003, Fiumara was offered and accepted a full-time temporary position as a bus driver.[1] In that job, Fiumara primarily operated a 40–foot Winnebago van ("the family van"). The position required that Fiumara have a CDL. When Fiumara accepted the job, he became a member of the International Union of Operating Engineers, Local 877 ("the Union") and remained a member until January, 2004. The Union was a signatory to a collective bargaining agreement with Harvard effective between December 8, 1998 and December 7, 2003 ("the old CBA") and a subsequent collective bargaining agreement effective between December 8, 2003 and December 7, 2007 ("the new CBA"). Fiumara's work as a family van driver was scheduled to end on June 6, 2003, but before the expiration date, his position was extended through June 30, 2003.

On June 19, 2003, Fiumara slipped on the steps of the family van, injuring both knees. Following the accident, Fiumara underwent a number of medical procedures. He also sought and eventually obtained worker's compensation benefits. With the exception of attending a meeting on December 19, 2003, Fiumara did not return to work at Harvard after the June, 2003, accident. Shortly after his fall, a representative of Harvard informed Fiumara that it would grant him 12 weeks of medical leave and that it was Harvard's practice to hold an employee's job open for six months.

From June, 2003, through the time of his termination, Fiumara's physicians regularly informed Harvard that Fiumara was not cleared to return to work. In July, 2003 Fiumara's supervisor called Fiumara at home to tell him that new employment as a bus driver was available for which he could bid. Despite not being medically cleared by his physicians to return to work, Fiumara was offered and accepted that position, a full-time permanent union job. A CDL was required. Although the position was scheduled to begin on July 7, 2003, Fiumara's supervisor told Fiumara that he need not start working at it until school opened in September. Fiumara never worked at that job. In August, 2003, Fiumara's DOT certificate expired and was never renewed.

In October, 2003, Fiumara learned about an open position at Harvard for a daytime,

---

1. The bus driver position was full-time with respect to the number of hours Fiumara would work per week but temporary in that the job had a fixed end date.

full-time van operator ("the Van Job"). The Van Job did not require a DOT certificate which Fiumara was unable to obtain because of his injury. At the time that Fiumara attempted to bid on the Van Job position, he had not been cleared by his physicians to return to work or to drive. Nevertheless, Fiumara believed that he could perform that job because it required driving a van which is similar to driving a car, an activity his physicians allowed him to do. However, representatives of Harvard refused to permit Fiumara to bid for the position. He filed a grievance with the Union but did not state in that grievance that he was bidding on the Van Job as an accommodation. The Union representative responded that under the provisions of the CBA, Fiumara was not an eligible bidder. There is a dispute among the parties as to whether Harvard informed Fiumara that he was ineligible before he filed a grievance. The senior qualified bidder for the Van Job, who had applied prior to Fiumara expressing an interest in it, was awarded the job as required by the CBA.

On October 20, 2003, a doctor examined Fiumara in connection with an Independent Medical Examination ("IME") pursuant to his worker's compensation claim. The IME doctor determined that Fiumara could return to work. In response to a phone call from Harvard asking that he return to work, Fiumara sent a letter to Harvard on December 8, 2003 stating that he was unable to obtain his DOT certification. In early December, 2003, a representative of Harvard demanded in writing that Fiumara return to work or face termination. On December 19, 2003, Fiumara reported to work. At the meeting on that day, Fiumara agreed to be examined three days later at Brookline Medical Associates ("BMA"), a clinic that performs DOT physicals, to determine whether Fiumara was medically qualified to drive.

According to Fiumara, upon returning home from the meeting, he realized that he already had a medical appointment with a mental health professional on the day of his scheduled BMA examination. He contacted BMA and rescheduled his appointment for the following day, December 23, 2003. On that day, Fiumara received a synvisc injection in his left knee, and as a result of swelling, inflammation and pain was unable to attend his appointment at BMA. Fiumara contacted BMA and because he had another synvisc injection scheduled for December 30, 2003, agreed with BMA to make a new appointment in January, 2004. Fiumara contends that the representative at BMA told him that she would notify Harvard that he planned to reschedule his appointment. Fiumara did not personally contact Harvard to extend his medical leave or to explain his failure to keep his appointment with BMA.

On January 5, 2004, Harvard sent a letter to Fiumara stating that because he had failed to attend the physical, report to work or to communicate appropriately with a representative of Harvard, he was considered to have constructively resigned.

B. Procedural History

In September, 2005 Fiumara filed a complaint in state court. On October 21, 2005, the case was removed to this court. Harvard answered the complaint in a timely fashion and thereafter Fiumara amended the original complaint. Harvard answered the amended complaint at the end of January, 2006. Fiumara's original counsel withdrew at the end of April, 2006, and new counsel appeared in September, 2006. Harvard filed a motion for summary judgment on March 15, 2007 which Fiumara opposes. On June 15, 2007, with leave of the Court, Harvard filed a motion to strike (among other things) plaintiff's

memorandum in opposition to the motion for summary judgment.

## II. *Analysis*

### A. Motion to Strike (Docket No. 24)

Harvard moves this Court to strike Fiumara's response to Harvard's statement of undisputed facts and Fiumara's memorandum in opposition to Harvard's motion for summary judgment. Harvard moves, in the alternative, that its Concise Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment be deemed admitted. In support of its motion, Harvard points out that Fiumara, in his opposition, frequently makes reference to documents that are not included in the record, makes assertions that are not supported, or are contradicted, by record evidence and makes conclusory allegations that are not supported by citations to the record.

The Court will not make individual rulings on the 37 alleged discrepancies. Instead, it has considered Harvard's statement of facts, Fiumara's response to the statement of facts, and Harvard's reply to Fiumara's response in order to determine which facts are supported by record evidence and are, in fact, truly undisputed. The preceding section entitled "Factual Background" is a summary of those supported and undisputed facts. Accordingly, this Court will deny Harvard's motion to strike.

### B. Motion for Summary Judgment (Docket No. 17)

#### 1. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991)(quoting *Garside v. Osco Drug,*

*Inc.,* 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the nonmoving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

#### 2. Analysis

##### a. Counts I, II and VII: Failure to Accommodate and Disability Discrimination under Massachusetts and Federal Law

Fiumara alleges that Harvard failed to accommodate his disability and discriminated against him based on his disability in violation of Chapter 151B

(Counts I and II, respectively) and the ADA (Count VII). In almost all relevant respects, Massachusetts disability discrimination analysis is identical to that of ADA claims. *Mulloy v. Acushnet Co.*, 460 F.3d 141, 154 (1st Cir.2006). As a result, the Supreme Judicial Court of Massachusetts has indicated that federal case law construing the ADA should be followed in interpreting Massachusetts disability law. *Id.* (citations omitted). Any relevant differences will be noted.

■ Under both Massachusetts and federal law, in order to prove that Harvard failed to provide reasonable accommodation, Fiumara must demonstrate that: 1) he has a physical or mental impairment that substantially limits one or more major life activities, 2) with or without reasonable accommodation, he was a qualified individual able to perform the essential functions of the position involved and 3) the employer, despite knowing of his disability, did not reasonably accommodate it. *See Estades Negroni v. Assocs. Corp. of North America*, 377 F.3d 58, 63 (1st Cir.2004); *Russell v. Cooley Dickinson Hosp., Inc.*, 437 Mass. 443, 772 N.E.2d 1054 (2002).

■ Proving disability discrimination under Massachusetts and federal law requires the plaintiff to prove the first two elements described above, as well as that the employer discharged the employee because of his disability. *Garcia–Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 646 (1st Cir.2000) (citations omitted); Mass. Gen. Laws ch. 151B, § 4(16); *Russell*, 437 Mass. at 449, 772 N.E.2d 1054.

Harvard and Fiumara disagree about whether Fiumara has satisfied the first element, i.e., that he has a handicap or disability within the meaning of Chapter 151B and the ADA. Assuming, without deciding, that Fiumara can demonstrate the first element, he has, nevertheless, failed to prove the second element of each claim and, thus his discrimination and failure to provide reasonable accommodation claims must fail.

### i. Qualified Individual

■ Fiumara has not demonstrated that he is a qualified individual. First, with regard to his Chapter 151B claim, Fiumara has not shown that he could perform the essential elements of the job. He was hired in a position that required him to maintain his CDL and, as of August, 2003, his DOT certification, which was required to maintain the CDL, had expired. Under Massachusetts law, in order to be a qualified individual, the employee must be able to perform the essential functions of *the position involved.* Mass. Gen. Laws ch. 151B, § 4(16). This is a more restrictive standard than that in the ADA, which defines reasonable accommodation to include reassignment to vacant positions. *Russell*, 437 Mass. at 454, 772 N.E.2d 1054. In the instant action, the position for which Fiumara was hired (bus driver) required a CDL. Without the DOT certification necessary for the CDL, Fiumara could not perform the essential elements of that position.

Moreover, Fiumara's own physicians continually wrote to Harvard stating that Fiumara was not able to return to work. Those notes did not include any indication that he could return with appropriate accommodation.

■ Finally, Fiumara has only identified two accommodations that may have allowed him to perform the essential elements of the job: 1) the right to bid for an open van driver position in October, 2003 and 2) additional leave after January 5, 2004. Neither of those accommodations, however, was reasonable.

### 1. Van Job

Fiumara sought to bid on the Van Job in October, 2003, a position that did not require a CDL. The parties disagree about whether Fiumara would have been physically able to perform the essential functions of that job. Harvard also claims that Fiumara did not inform Harvard that he was bidding on the Van Job as an accommodation for a disability. Assuming that Fiumara was able to perform the job's essential elements and that Fiumara indicated that he wanted to bid on the job as an accommodation, Fiumara still cannot demonstrate that such an accommodation was reasonable.

First, as discussed above under Massachusetts law, an employer may not dismiss an employee who is capable of performing the essential functions of *the position involved* with reasonable accommodation. MASS. GEN. LAWS ch. 151B, § 4(16). The Van Job was not an accommodation for "the position involved" but instead was a separate position. As a result, Harvard was not obligated under Massachusetts law to accommodate Fiumara by awarding him the Van Job, a different position than the one for which he had been hired.

Second, Fiumara was not an eligible bidder for the Van Job under the provisions of the CBA. Bidding rights under the CBA extend only to opportunities for promotion, and Fiumara would have earned less money in the Van Job than he had previously earned as an employee of Harvard. The Van Job was awarded to a Harvard employee and Union member who was the senior qualified bidder for the job and who bid on the job prior to Fiumara expressing an interest in the job.

Although Harvard is required to provide reasonable accommodation to its disabled employees, it is not required to provide an accommodation that is inconsistent with the contractual rights of other workers

under a CBA. *Laurin v. Providence Hosp.*, 150 F.3d 52, 60 (1st Cir.1998) (finding that it was not a reasonable accommodation under the ADA to excuse the plaintiff from shift rotation when the CBA only waived the shift rotation requirement for nurses at a certain seniority level). Under the old and new CBA, a different Harvard employee, not Fiumara, was contractually entitled to and was awarded the Van Job. Harvard was not required to violate that employee's contractual rights under the CBA in order to accommodate Fiumara. *See id.*

### 2. Extended Medical Leave

■ Fiumara unpersuasively contends that Harvard refused reasonably to accommodate him by not extending his medical leave.

There is evidence in the record that Fiumara never asked Harvard for an extension of his leave. Assuming, however, that Harvard was aware that Fiumara sought extension of his leave as an accommodation, it had no legal obligation to provide it. Under Massachusetts and federal law, a leave of absence and leave extensions are reasonable accommodations in some circumstances. *Garcia–Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 647–48 (1st Cir.2000); *Russell v. Cooley Dickinson Hosp. Inc.*, 437 Mass. 443, 455–56, 772 N.E.2d 1054 (2002). An open-ended or indefinite leave extension, however, is not reasonable. *Watkins v. J & S Oil Co.*, 164 F.3d 55, 61–62 (1st Cir.1998); *Russell*, 437 Mass. at 455–56, 772 N.E.2d 1054. Fiumara did not, at any time prior to January 5, 2004, indicate that his doctors would allow him to return to work. When Harvard tried to set up an appointment for Fiumara to help determine when he would be able to return to work, Fiumara failed to keep the appointment or to communicate directly with Harvard re-

garding the rescheduling. Fiumara claims to have informed Harvard that he would be getting a brace on January 7, 2004 that would help him to return to work. He did not indicate, however, how quickly the brace would allow him to return to work, nor did he offer a time frame for when he would be able to return to work. Harvard was not, therefore, required to extend Fiumara's leave indefinitely as an accommodation. *See Watkins,* 164 F.3d at 61–62; *Russell,* 437 Mass. at 456, 772 N.E.2d 1054.

### ii. Failure to Engage in an Interactive Process

An employer may also be liable for a failure to accommodate if it fails to engage in an interactive process with the employee regarding accommodations. *See Tobin v. Liberty Mutual Ins. Co.,* 433 F.3d 100, 108–09 (1st Cir.2005); *Russell,* 437 Mass. at 457, 772 N.E.2d 1054. As part of determining whether an employee can perform the essential functions of a position with reasonable accommodation, the employer and employee must engage in an interactive process. *Id.* There is a dispute between the parties as to whether Fiumara initiated that process or even communicated to Harvard that he would like an accommodation. Regardless of whether Fiumara initiated the process, it was he, rather than Harvard, who ultimately failed to engage in the interactive process.

At several times during Fiumara's leave, Harvard attempted to help Fiumara return to work despite the notices from his doctor that he could not do so. When Harvard learned from the IME that Fiumara could drive, it set up a meeting to discuss Fiumara's employment options. At that meeting Harvard made an appointment for a DOT physical which Fiumara agreed to attend. Fiumara then rescheduled and subsequently failed to attend the appointment. Although Fiumara suggests that he planned to reschedule the appointment in January, he never communicated directly with Harvard regarding those intentions. Consequently, Fiumara was not actively engaged in the interactive process.

Fiumara has not shown that he could perform the essential elements of his position with reasonable accommodation nor that Harvard failed to engage in an interactive process. As a result, the defendant's motion for summary judgment as to Counts I, II and VII will be allowed.

### b. Count III: Retaliation

In Count III, Fiumara alleges that Harvard retaliated against him in violation of Mass. Gen. Laws Ch. 151B, § 4(4) ("the retaliation claim"). He states in the complaint that Harvard retaliated against him because of his disability, his filing of a worker's compensation claim and his filing of various union grievances to protest his unfair and unlawful treatment by Harvard. In his memorandum in opposition to summary judgment, however, Fiumara asserts only that Harvard retaliated against him for requesting reasonable accommodation.

Under Massachusetts law, it is unlawful for an employer

> to discharge ... any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under section five.

Mass. Gen. Laws ch. 151B, § 4(4). Thus, to establish Harvard's liability for retaliation, Fiumara must prove that he engaged in some protected behavior (i.e., opposing discriminatory practices of Harvard) and was fired as a result of that behavior. See *Abramian v. President & Fellows of Harvard College,* 432 Mass. 107, 121, 731 N.E.2d 1075 (2000). Fiumara does not appear to have engaged in any such behav-

ior and there is no evidence that he was fired as a result of any potentially protected activity.

Fiumara wrote two critical letters to Harvard pre-termination accusing it of violating DOT regulations, the worker's compensation law and the CBA. The correspondence did not include complaints regarding discrimination. Fiumara's first written complaint regarding discrimination is dated after his termination. Moreover, the Union grievance that Fiumara filed while employed did not allege employer discrimination. Fiumara admits that he has no basis for believing that Harvard terminated him because he filed a discrimination claim.

With respect to possible retaliation as a result of the filing of his worker's compensation claim, there is no evidence that Fiumara's termination was at all connected to that claim. Knowing that Fiumara had filed a worker's compensation claim, Harvard notified him of and awarded him a new position in July, 2003. Fiumara did not work in that position because he was medically unable to do so.

Fiumara, in his opposition brief, claims that by requesting reasonable accommodation, he engaged in protected activity and that Harvard fired him in retaliation for making the request. As explained above, there is no evidence that Fiumara requested any such reasonable accommodation. He never told Harvard explicitly that he sought the Van Job or an extension on his leave as an accommodation. Even if Harvard was aware that the requests were for accommodations, there is no evidence that such requests were connected to Fiumara's termination. After Fiumara allegedly sought the Van Job as an accommodation, Harvard attempted to get him back to work by scheduling him for a DOT evaluation.

Because Fiumara has failed to show that he engaged in protected conduct during the relevant time and because he has failed to show that any possible protected conduct was causally related to his termination, defendant's motion for summary judgment as to Count III will be allowed.

**c. Count IV: Breach of Contract**

In Count IV, Fiumara alleges that Harvard's actions constitute a breach of contract. In the complaint, Fiumara identifies the contract as including the CBA. Fiumara does not identify any other contract either in his complaint or in his opposition brief that may have been breached.

Section 301 of the Labor–Management Relations Act ("LMRA") preempts state law claims if such claims require the court to interpret a collective bargaining agreement. 29 U.S.C. § 185 (2006); *Quesnel v. Prudential Ins. Co.* 66 F.3d 8, 10 (1st Cir.1995). Fiumara was an employee covered by a collective bargaining agreement and, because Fiumara has identified no other independent contract that was breached, his breach of contract claim requires interpretation of the CBA. See *Magerer v. John Sexton & Co.*, 727 F.Supp. 744, 749 (D.Mass.1990) aff'd, 912 F.2d 525 (1st Cir.1990). Count IV, therefore, must be treated as a claim brought pursuant to the LMRA or dismissed as preempted by federal law. *See Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

If treated as a claim brought pursuant to the LMRA, Fiumara must exhaust the grievance and arbitration procedures outlined in the CBA. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652–53, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). After being denied the Van Job, Fiumara did file a Union grievance but he did not advance it past Step 1 of a three-step grievance procedure. Upon being terminated, Fiumara

pursued a second grievance, this time through Step 3, but neither he nor the Union pursued arbitration, the final step of the grievance and arbitration procedure. Because Fiumara did not exhaust those procedural prerequisites, Harvard's motion for summary judgment as to Count IV will be allowed.

### d. Count V: Breach of the Implied Covenant of Good Faith and Fair Dealing

Count V alleges a breach of the implied covenant of good faith and fair dealing. Fiumara does not make clear in the complaint or in his opposition brief how Harvard violated the covenant. In the complaint Fiumara states only that the actions of Harvard constituted "a breach of the covenant of good faith and fair dealing inherent in the contractual relations between [Harvard] and [Fiumara]." Just as with respect to the breach of contract claim, whether Harvard acted in good faith and fairly dealt with Fiumara requires an interpretation and application of the provisions of the CBA. As a result, Count V is preempted and because Fiumara did not exhaust the grievance and arbitration procedure, it will be dismissed. *See Maddox,* 379 U.S. at 652–53, 85 S.Ct. 614.

### e. Count VI: Violation of the Labor Management Relations Act

Count VI alleges that Harvard violated the LMRA. Fiumara does not state in his complaint the specific ways in which Harvard violated that statute, and his opposition brief does not address this count. As a result, this Court will allow the defendant's motion for summary judgment as to Count VI.

### ORDER

In accordance with the foregoing, the defendant's motion to strike (Docket No. 24) is **DENIED** and the defendant's motion for summary judgment (Docket No. 17) is **ALLOWED.**

**So ordered.**