### Earnestine OBY

v.

### BATON ROUGE MARRIOTT a/k/a Sodexho, Inc. et al.

### No. CIV.A. 03–495–B–M1.

United States District Court, M.D. Louisiana.

Aug. 5, 2004.

Robert E. Randolph, Baton Rouge, LA, for Plaintiff.

Bethany Brantley Johnson, Brandon M. Cordell, Herbert C. Ehrhardt, Lewis, Fisher, Henderson, Claxton & Mulroy, LLP, Jackson, MS, for Defendants.

## *RULING*

POLOZOLA, Chief Judge.

This matter is before the Court on the motion for summary judgment filed by defendants, Columbia Sussex Corp., d/b/a Baton Rouge Marriott,[1] Janet Beck Schwartz, in her official capacity as General Manager of the Baton Rouge Marriott, and XYZ Insurance Company.[2] The motion is opposed.[3] For reasons that follow, defendants' motion for summary judgment is granted.[4]

### A.  Factual and Procedural History

Plaintiff, Earnestine Oby filed this lawsuit against Baton Rouge Marriott, a/k/a

Sodexho, Inc., Janet Beck Schwartz, in her official capacity as General Manager of the Baton Rouge Marriott, and XYZ Insurance Company[5] alleging violations of the Family and Medical Leave Act ("FMLA").[6] Thereafter, plaintiff amended her suit to name Columbia Sussex Corp., d/b/a Baton Rouge Marriott as the proper defendant instead of Baton Rouge Marriott, a/k/a Sodexho, Inc.[7] Specifically, plaintiff alleges that Columbia Sussex violated her rights guaranteed by the FMLA. Plaintiff also alleges that Columbia Sussex retaliated against her for exercising her rights under the FMLA.

Columbia Sussex has filed this motion for summary judgment seeking dismissal of all of plaintiff's claims under the FMLA. Columbia Sussex argues that there are no genuine issues of material fact with respect to the FMLA interference and retaliation claims. Columbia Sussex also argues that the applicable law does not support plaintiff's claim for punitive damages and damages for emotional distress under the FMLA. Finally, Columbia Sussex contends that Janet Schwartz should be dismissed as a defendant from this case as a matter of law.

The Court believes it is important to set forth the factual background of this case to properly understand the Court's ruling. Columbia Sussex acquired the Baton Rouge Marriott in September 2000. Plain-

---

1.  This lawsuit was originally filed against Baton Rouge Marriott, a/k/a Sodexho, Inc. However, plaintiff amended her complaint to name Columbia Sussex Corp., d/b/a Baton Rouge Marriott as the defendant instead of Baton Rouge Marriott, a/k/a Sodexho, Inc. *See* Rec. Doc. No. 11.

2.  Rec. Doc. No. 35.

3.  Rec. Doc. No. 41.

4.  In making its ruling, the Court has considered all of the arguments of the parties, including those made in submitted briefs and at oral argument, whether or not discussed in this opinion.

5.  Fictitious parties are not recognized in federal court proceedings.

6.  29 U.S.C. § 2601, et. seq.

7.  *See* Rec. Doc. No. 11.

tiff began working at the hotel in 1976 and had worked at the Baton Rouge Marriott for 26 years until 2002. In 2002, plaintiff was the manager of all of the housekeepers at the Baton Rouge Marriott, or the Executive Housekeeper. Her annual salary was $41,000, and plaintiff was the third highest paid employee of the 111 total employees that then worked at the Baton Rouge Marriott. It is clear from the evidence that plaintiff's position was managerial in nature since plaintiff had supervisory authority over the other housekeepers and had the authority to approve requests for leave by her subordinates. It is also clear that plaintiff was a good employee and the defendant was satisfied with her work performance until the incident which led to this suit. It is also clear that there is no evidence in the record which suggests that defendant had developed a plan to terminate the plaintiff before the incident that forms the basis of this lawsuit. Finally, it is clear that plaintiff was caring for a person who was covered by the FMLA.

On Thursday, March 21, 2002, plaintiff advised Janet Schwartz, the General Manager of the Baton Rouge Marriott, that she needed to take a month off to care for her elderly parents. Plaintiff's father apparently suffered from Alzheimer's disease. Although there was no medical emergency, plaintiff testified that her sister was "burned out" from having to care for her parents, and needed plaintiff's help. Plaintiff originally wanted her leave to begin on Monday, March 25. Because plaintiff's second-in-command housekeeper, Shirley Chambers, was out as well, Schwartz requested and plaintiff agreed to delay the beginning date of her leave until Friday, March 29. Plaintiff complied with this request without objection.

On March 22, 2002, Schwartz had plaintiff complete all of the necessary FMLA paperwork requested by the human resources director for Columbia Sussex. On March 28, 2002, Schwartz delivered to plaintiff her paycheck and the following letter:

> During your leave I would appreciate a call from you on April 12, 02 to let me know if you plan to return to work to the Baton Rouge Marriott. The Executive Housekeeper position is critical to the success of this hotel, and we need to have a plan in place and will be looking at possible candidates during your leave. As you know, this last minute request for a leave has placed the hotel in a very tenuous position. We do not wish to be placed in this position again, thus the need for an alternative plan. The hotel, the associates, and the owners all depend on income from this hotel, and we can only be successful with a clean facility. We sincerely hope you plan to return to the hotel, and wish you the best of luck with your parents. Thank you for your service.[8]

Plaintiff alleges that Schwartz lectured her when she handed plaintiff her check on March 28, 2002 and told her that if it was her mother, Schwartz would place her in a nursing home.[9]

On April 12, 2002, plaintiff returned to the Baton Rouge Marriott to pick up her paycheck. Although plaintiff met with Schwartz at this time, she did not tell Schwartz when she would be returning to work. On April 26, 2002, the day before plaintiff was expected to return to work at the Baton Rouge Marriott, plaintiff came to the hotel and advised Schwartz that she would not be coming back to work on the following day. During this discussion, plaintiff did not give Schwartz any definite

---

8. Rec. Doc. No. 38, Exhibit A, Exhibit 3.

9. Rec. Doc. No. 41 at 13.

information or indication about when she would be returning to work. Plaintiff did advise Schwartz that she was taking her father to the doctor on May 10, 2002 and would have more information after that date.

After obtaining approval from Columbia Sussex's home office, Schwartz granted plaintiff's request for additional leave time. At this point, plaintiff had already used four of her twelve weeks of FMLA leave and she only had eight weeks of FMLA leave remaining. Plaintiff also had accrued annual leave, but plaintiff's accrued annual leave ran concurrently with her FMLA leave under Columbia Sussex's FMLA policy. After granting plaintiff's FMLA request, Schwartz advised plaintiff that her FMLA leave would expire on June 21, 2002. However, on April 26, 2002, Schwartz also advised plaintiff that she needed to return to work by May 10, 2002.

In a letter dated April 29, 2002 Schwartz confirmed with the plaintiff the things they had discussed on April 26, 2002. Specifically, Schwartz advised plaintiff in writing that her FMLA entitlement would expire on June 21, 2002. Schwartz also advised plaintiff in this letter that she was considered a key employee [10] under the FMLA, and accordingly, she would be denied reinstatement unless she returned to work by May 10, 2002. Schwartz advised plaintiff of the consequences of her key employee status as follows:

> Because of your position and the expected duration of your leave, we will have to permanently replace you. Reinstat-

ing you at the end of the leave would therefore cause us substantial and grievous economic harm. For that reason, we expect to deny reinstatement to you if you should offer to return at the end of your FMLA leave in accordance with FMLA regulations. That means that you would lose the executive housekeeper position and the benefits that come along with it.

> We must make a decision on a permanent replacement soon. If you can return to work by Friday May 10, we will not have to permanently replace you. Please let us know by Friday May 6, if you can return by May 10.[11]

On May 7, 2002, a day after the deadline Schwartz had imposed in her April 29, 2002 letter, Schwartz called plaintiff and asked if she would be coming back to work. Plaintiff told Schwartz that she did not know when she would be returning to work, but it would not be on May 10, 2002. On May 9, 2002, Schwartz sent plaintiff a letter confirming their May 7, 2002 telephone conversation and confirmed that "[plaintiff] stated [she] would not be returning to work at the Baton Rouge Marriott." [12] However, plaintiff maintains that, at no time, either verbally or in writing, did she ever tell anyone at Columbia Sussex that she did not intend to return to her position at the Baton Rouge Marriott once her parents rehabilitated.[13] In fact, plaintiff consistently argues that the May 10, 2002 date was not just pulled out of the air, but was, in fact, the date that her father was scheduled for a doctor's ap-

---

**10.** It is clear that plaintiff was a key employee under the FMLA. Not only was she the third highest paid employee over 100 employees at the hotel, she was head of one of the most important departments at the hotel—housekeeping. It is clear that it is important for hotels to have rooms properly cleaned and available on a timely basis for their guests.

**11.** Rec. Doc. No. 38, Exhibit A, Exhibit 5.

**12.** Rec. Doc. No. 38, Exhibit A, Exhibit 9.

**13.** Rec. Doc. No. 41 at 6.

pointment which would hopefully give plaintiff more information about her father's condition and the amount of time she needed off.[14] Indeed, plaintiff did not return to work at the Baton Rouge Marriott on May 10, 2002. She did return to the hotel on May 10, 2002 to get a paycheck. On June 3, 2002, plaintiff applied for unemployment benefits and stated on the application that she had been fired by Columbia Sussex on May 24, 2002.[15]

Columbia Sussex began advertising for applicants to fill the Executive Housekeeper position on approximately May 23, 2002. Although the exact date is unknown, Wilbert Roach was offered plaintiff's job at the same salary plaintiff had earned. Because Roach was required to give a two-week notice to his prior employer and relocate his family from New Orleans, he did not begin working at the Baton Rouge Marriott on June 24, 2002.

On June 21, 2002, the day that plaintiff's FMLA leave would have expired, plaintiff returned to the Baton Rouge Marriott and advised the hotel that she was looking for work. Plaintiff feels this date is pivotal because, as noted above, her replacement did not begin working at the Baton Rouge Marriott until June 24, 2002.[16] Thus, plaintiff contends it would not have caused Columbia Sussex any injury to give her the Executive Housekeeper position on June 21, 2002. However, Columbia Sussex counters that it and Roach would have been prejudiced because Roach had already been hired by June 21, had notified his prior employer that he was resigning and had relocated his family from New

Orleans to Baton Rouge. Columbia Sussex also contends that plaintiff did not ask for reinstatement and relies on the following testimony from plaintiff's deposition:

Q. DID YOU TELL HER YOU WANTED YOUR JOB BACK?

A. I DIDN'T—I NEVER GOT TO THE POINT WHERE I NEEDED TO TELL HER. SHE HAD ALREADY TOLD ME SHE HAD AN EXECUTIVE HOUSEKEEPER, AND THE ONLY POSITION SHE HAD WAS THE ROOM ATTENDANT.[17]

At the June 21, 2002 meeting, Schwartz offered plaintiff several housekeeping positions, which plaintiff declined.[18] Schwartz also offered plaintiff the position of food and beverage manager ("F & B Manager") because the current F & B Manager was moving out of state. Plaintiff was offered her same salary of $41,000 to be the F & B Manager, even though the current F & B Manager was not making that much money. Plaintiff also declined this position because she claimed that she had no training in this area and that it was against her religion to sell liquor.[19] Further, plaintiff stated in her deposition that she felt Columbia Sussex was only placing her into this position to watch her fail at a position which she had no prior experience or training in. Columbia Sussex claims that it could not afford to keep two Executive Housekeepers at the $41,000 each were to be paid. Defendant also argues that it felt plaintiff did have the supervisory experience to handle the food job and was willing to keep her salary at $41,000 even though

14. Rec. Doc. No. 41 at 7.

15. For reasons not important to this motion, plaintiff was not able to get unemployment benefits at that time.

16. Rec. Doc. No. 41 at 10.

17. Rec. Doc. No. 38, Exhibit A at 83.

18. Columbia Sussex concedes that these positions offered plaintiff less money and supervisory authority than the Executive Housekeeper position did.

19. Plaintiff is a deaconess in her church.

its prior F & B Manager was paid substantially less. The Court now turns to a discussion of the law applicable to this case.

## B. Law and Analysis

### 1. Standard for Summary Judgment

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[20] The Supreme Court has interpreted Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[21]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[22] The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[23] Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[24] The substantive law dictates which facts are material and determines whether or not summary judgment should be granted.[25] Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.[26] The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[27] Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[28]

### 2. Family Medical and Leave Act ("FMLA")

The Family Medical and Leave Act ("FMLA") was enacted, in part, to ". . . balance the needs of the workplace with the needs of families . . ."[29] Under the FMLA, an employee is permitted to take reasonable leave for medical reasons and

---

**20.** Fed R. Civ. P. 56(c); *Wyatt v. Hunt Plywood Co.,* 297 F.3d 405, 408–09 (5th Cir. 2002); *New York Life Ins. Co. v. Travelers Ins. Co.,* 92 F.3d 336, 338 (5th Cir.1996); and *Rogers v. Int'l Marine Terminals, Inc.,* 87 F.3d 755, 758 (5th Cir.1996).

**21.** *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Gunaca v. Texas,* 65 F.3d 467, 469 (5th Cir.1995).

**22.** *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1046–47 (5th Cir.1996).

**23.** *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1077 (5th Cir.1994); and *Wallace,* 80 F.3d at 1047.

**24.** *Wallace,* 80 F.3d at 1048 (citations omitted); *see also S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 494 (5th Cir.1996).

**25.** *Canady v. Bossier,* 240 F.3d 437, 439 (5th Cir.2001).

**26.** *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

**27.** *McCallum Highlands v. Washington Capital Dus, Inc.,* 66 F.3d 89, 92 (5th Cir.1995), *as revised on denial of rehearing,* 70 F.3d 26 (5th Cir.1995).

**28.** *Anderson,* 477 U.S. at 249–51, 106 S.Ct. at 2511.

**29.** 29 U.S.C. § 2601(b)(1).

for the care of a child, spouse, or parent who has a serious health condition.[30] The FMLA applies to private-sector employers of 50 or more employees.[31] An employee is eligible for FMLA leave after working for a covered employer for at least 1250 hours during the preceding 12 months.[32] It is undisputed that plaintiff was an eligible employee for FMLA benefits and that there was a need for her to care for her parent.

The FMLA has two distinct provisions. First, it provides certain entitlements.[33] An eligible employee of a covered employer has the right to take unpaid leave for a period of up to 12 work weeks in any 12–month period when the employee has "a serious health condition that makes [him or her] unable to perform the functions of [his or her] position;"[34] to care for a close family member with a serious health condition;[35] because of the birth of a son or daughter;[36] or placement of a child with the employee for adoption or foster care.[37] Following a qualified leave period, the employee is entitled to reinstatement to the former position or an equivalent one with the same benefits and terms.[38] Second, the Act protects employees from interference with their leave as well as against discrimination or retaliation for exercising their rights under the Act.[39] Thus, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any rights provided under" the FMLA.[40] An employer is also prohibited from discriminating or retaliating against an employee for exercising his or her rights under the FMLA.[41]

## a. Interference with FMLA Rights

Columbia Sussex argues that it is entitled to summary judgment on plaintiff's interference with FMLA rights claim because it was permitted as a matter of law to recall plaintiff, as a key employee, under the FMLA. According to Columbia Sussex, there are no genuine issues of material fact concerning whether plaintiff was a key employee and whether it complied with the FMLA notice requirements concerning key employees. Because plaintiff failed to return to work on the date she was asked to after being notified in writing of her key employee status, Columbia Sussex argues that plaintiff should be considered as having abandoned her job thus making summary judgment appropriate.

In the alternative, Columbia Sussex argues plaintiff's interference with FMLA rights claim should be dismissed as a matter of law because she was offered an equivalent position, the F & B Manager position with the same salary and other benefits she received as Executive Housekeeper. Columbia Sussex also argues that the evidence in the record establishes that

---

30. 29 U.S.C. § 2601(b)(2).

31. 29 U.S.C. § 2611(4).

32. 29 U.S.C. § 2611(2)(A).

33. *See Hodgens v. General Dynamics Corp.,* 144 F.3d 151 (1st Cir.1998); *Diaz v. Fort Wayne Foundry Corp.,* 131 F.3d 711 (7th Cir. 1997); *Morgan v. Hilti, Inc.,* 108 F.3d 1319 (10th Cir.1997).

34. 29 U.S.C. § 2612(a)(1)(D).

35. 29 U.S.C. § 2612(a)(1)(C).

36. 29 U.S.C. § 2612(a)(1)(A).

37. 29 U.S.C. § 2612(a)(1)(B); *see also* 29 U.S.C. § 2611(12).

38. 29 U.S.C. § 2614(a).

39. . *Hypes v. First Commerce Corp.,* 134 F.3d 721 (5th Cir.1998).

40. 29 U.S.C. § 2615(a)(1).

41. 29 U.S.C. § 2615(a)(2).

reinstating plaintiff to her old position of Executive Housekeeper would have caused it substantial and grievous economic injury because Columbia Sussex could not afford to pay two Executive Housekeepers at the $41,000 salary. Finally, Columbia Sussex says the evidence in the record indicates that plaintiff never asked for reinstatement. Instead, defendant argues that plaintiff only returned to the Baton Rouge Marriott on June 21, 2002 looking for work.

Plaintiff argues there are factual issues with respect to the interference claim which preclude the Court from granting a summary judgment. Plaintiff argues that she was prevented from asking for reinstatement on June 21, 2002 because Schwartz had misrepresented to her that the Executive Housekeeper position had been already filled when in fact her replacement did not start work until June 24, 2002. Columbia Sussex contends that its representation that the Executive Housekeeper position had been filled would have not prevented plaintiff from asking for reinstatement to the position. Plaintiff also contends that there is no evidence to support Columbia Sussex's contention that she abandoned her job. In addition, plaintiff argues that she was not offered an equivalent position because the F & B Manager position required different expertise than

plaintiff had. Finally, plaintiff further contends that her position as a deaconess in her church would have prevented her from being the F & B Manager because she would have been required to sell intoxicating beverages.[42]

As discussed above, the FMLA does provide covered employees with certain entitlements under the statute. Since the issue is the right to an entitlement, the employee is due the benefits provided under the statute if the statutory requirements are satisfied, regardless of the intent of the employer.[43] In other words, the employer's motive is irrelevant in a FMLA interference claim. The appropriate question is whether the employer gave the employee her rights due under the FMLA.[44]

█ When an eligible employee returns from leave taken under the FMLA, the employer must restore the employee to the same position or to "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."[45] An equivalent position is one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort,

**42.** As a side argument, plaintiff argues that her health insurance was discontinued after her May 7, 2002 paycheck in violation of the FMLA. Columbia Sussex contends the plaintiff's health insurance was discontinued because premium payments were no longer being deducted from plaintiff's paycheck once she was no longer earning a salary at Columbia Sussex. Columbia Sussex has set forth in the record evidence to establish that plaintiff was notified that her health insurance would be terminated because she was not paying the premiums. The evidence provided by Columbia Sussex is sufficient to overcome plaintiff's frivolous argument about her health insurance. The Court will ignore such evidence in

determining the merits of this motion for summary judgment.

**43.** *Hodgens,* 144 F.3d at 159.

**44.** *See King v. Preferred Technical Group,* 166 F.3d 887, 891 (7th Cir.1999); *Dressler v. Community Service Communications, Inc.,* 275 F.Supp.2d 17, 22–23 (D.Me.2003)(Kravchuk, Mag.J.).

**45.** 29 U.S.C. § 2614(a)(1). *See also Nero v. Indus. Molding Corp.,* 167 F.3d 921, 925 (5th Cir.1999).

responsibility, and authority.[46] An equivalent position must have substantially similar duties, conditions, responsibilities, privileges and status as the employee's original position.[47] The requirement that an employee be restored to the same or equivalent job with the same or equivalent pay, benefits, and terms and conditions of employment does not extend to *de minimis* or intangible, unmeasurable aspects of the job.[48]

The equivalent position requirement of the FMLA has not been the subject of interpretation by the Fifth Circuit, but other circuit courts of appeals have interpreted this requirement narrowly. In *Montgomery v. Maryland,*[49] the Fourth Circuit held that an FMLA plaintiff who worked as an administrative aide to the warden of a prison before taking her leave, and who was reassigned to a position as a secretary in the maintenance department after her return, was restored to an equivalent position under the FMLA. The Fourth Circuit reached this result because the differences in the positions were the sorts of "*de minimis,* intangible, and unmeasurable aspects of a job that the regulations specifically exclude."[50] The Fourth Circuit reasoned that because plaintiff's pay grade, increment level, and classification remained the same, and plaintiff had received a pay raise in her new position, the positions were equivalent. Plaintiff's complaints about the complexity of the job, the loss of work space,

and the diminished job security were *de minimis* concerns according to the Fourth Circuit.[51] Similarly, in *Watkins v. J & S Oil Co.,*[52] the First Circuit defined the term "equivalent position" as meaning "that which is substantially equal or similar, [but] not necessarily identical or the same." [53]

It is an undisputed fact that the plaintiff in this case was offered the position of F & B Manager at her same salary of $41,000, even though the former F & B Manager was not making that much money. It is also undisputed that plaintiff declined the F & B Manager position. Plaintiff has failed to set forth any summary judgment type evidence to rebut Columbia Sussex's evidence that the F & B Manager position had the same employment benefits, pay, and other terms and conditions of employment as the Executive Housekeeper position had. Plaintiff also has failed to produce any evidence that the F & B Manager position did not involve the same or substantially similar duties and responsibilities as the Executive Housekeeper position. Although the positions were not identical, they both involved supervisory duties and both had the same goal and responsibility—customer service in and maintenance of the Baton Rouge Marriott in a managerial capacity. It is undisputed that plaintiff was able to maintain a supervisory position and keep her $41,000 salary, which was then the third

**46.** 29 C.F.R. § 825.215(a).

**47.** 29 C.F.R. § 825.215(e).

**48.** 29 C.F.R. § 825.215(f).

**49.** 266 F.3d 334 (4th Cir.2001), *vacated on other grounds by Montgomery v. Maryland,* 535 U.S. 1075, 122 S.Ct. 1958, 152 L.Ed.2d 1019 (2002).

**50.** *Id.* at 341. The only differences between plaintiff's former and current positions was that the former position required administrative functions, but the new position was only clerical. The plaintiff also complained she had lost her own private work area and had less job security.

**51.** *Id.*

**52.** 164 F.3d 55 (1st Cir.1998).

**53.** *Id.* at 59.

highest salary at the hotel. Plaintiff claims that: (1) the F & B Manager position was not an equivalent position because she would have had to train for this position since she had no expertise as a F & B Manager; (2) she was being set up by Columbia Sussex to fail; and (3) the position violated her religious beliefs against selling alcohol. These arguments are either based on plaintiff's subjective beliefs regarding the position she declined or intangible aspects of the job. In fact, it is clear that plaintiff had an excellent work record at the hotel and the hotel had no plan or intent to terminate plaintiff from her Executive Housekeeping position prior to the time she took the FMLA leave. This Court does not believe the FMLA should be interpreted in such a way that would prevent Columbia Sussex from requiring an employee who returns from FMLA leave to undergo additional training for a position. Plaintiff has failed to submit material facts to rebut the undisputed fact that plaintiff was offered an equivalent position and turned it down. Accordingly, summary judgment is appropriate on the FMLA interference claim as a matter of law under the facts of this case.

In the alternative, the Court finds that Columbia Sussex is entitled to summary judgment on the FMLA interference claim because the clear and undisputed evidence reveals that plaintiff was a key employee. An employer may deny restoration to a key employee who took FMLA leave if such denial is necessary to prevent substantial and grievous economic injury to the operations of the employer.[54] In order to take advantage of this key employee provision, the employer must notify

the employee of its intent to deny restoration on such basis at the time the employer determines that such injury would occur and, in any case in which the leave has commenced, the employee elects not to return to employment after receiving such notice.[55] An employer who believes that reinstatement may be denied to a key employee, must give written notice to the employee at the time the employee gives notice of the need for FMLA leave (or when FMLA leave commences, if earlier) that he or she qualifies as a key employee. At the same time, the employer must also fully inform the employee of the potential consequences with respect to reinstatement and maintenance of health benefits if the employer should determine that substantial and grievous economic injury to the employer's operations will result if the employee is reinstated from FMLA leave. If such notice cannot be given immediately because of the need to determine whether the employee is a key employee, it shall be given as soon as practicable after being notified of a need for leave (or the commencement of leave, if earlier). An employer who fails to provide a timely notice will lose its right to deny restoration even if substantial and grievous economic injury will result from reinstatement.[56] The key employee provisions of the FMLA only apply to salaried employees among the highest paid 10 percent of the employees employed by the employer within 75 miles of the facility at which the employee is employed.[57]

To deny restoration to a key employee, an employer must determine that restoring the employee to employment will cause substantial and grievous economic injury to the operations of the employer, not

54. 29 U.S.C. § 2614(b)(1)(A).

55. 29 U.S.C. § 2614(b)(1)(B)(c).

56. 29 C.F.R. § 825.219(a).

57. 29 U.S.C. § 2614(b)(2).

whether the absence of the employee will cause such substantial and grievous injury.[58] The regulations do not provide a precise test for the level of hardship or injury to the employer which must be sustained to constitute a substantial and grievous injury. If the reinstatement of a key employee threatens the economic viability of the firm, that would constitute substantial and grievous economic injury. A lesser injury which causes substantial, long-term economic injury would also be sufficient. Minor inconveniences and costs that the employer would experience in the normal course of doing business would certainly not constitute substantial and grievous economic injury.[59]

Plaintiff has not presented any evidence to rebut the fact that she was a key employee or that she was the third highest paid employee at the Baton Rouge Marriott. Further, plaintiff has not submitted any evidence to rebut the evidence offered by Columbia Sussex that supports a finding that it complied with the FMLA regulations surrounding key employees. Finally, plaintiff has not presented any evidence to rebut Columbia Sussex's evidence that it would have suffered substantial and grievous economic injury had it reinstated plaintiff to the position of Executive Housekeeper. In fact, the undisputed evidence shows that plaintiff was relied upon as the Executive Housekeeper at the Baton Rouge Marriott to keep the facilities clean and Columbia Sussex's customers happy. In consideration of this reliance, plaintiff was the third highest paid employee at the facility. When plaintiff left, the facility was suffering, and an educated business decision was made to replace plaintiff according to the undisputed testimony of General Manager Schwartz. This decision is further supported by the undis-

puted evidence that plaintiff refused to tell her employer when she planned to return to work. Once plaintiff did return, and ask for reinstatement, her position had already been filled since Columbia Sussex had made the decision to replace her. Defendant had also determined that reinstating plaintiff would cause it substantial and grievous economic injury if it had to pay two Executive Housekeepers $41,000 each. Thus, summary judgment is also appropriate on the FMLA claim because there are no material issues of fact to rebut the conclusion that plaintiff was a key employee who was not entitled to reinstatement.

Finally, the Court must note that it is irrelevant to even decide whether plaintiff actually asked for reinstatement. The undisputed facts reveal that plaintiff was offered an equivalent position, she was a key employee, and Columbia Sussex complied with the FMLA requirements concerning key employees. Because summary judgment is appropriate on the FMLA interference claim, the issue of whether or not plaintiff actually asked for reinstatement is not a material issue of fact that would preclude the Court from granting summary judgment under the facts of this case.

#### b. FMLA Retaliation

Columbia Sussex also contends it is entitled to summary judgment on plaintiff's FMLA retaliation claim. Specifically, Columbia Sussex argues that plaintiff cannot satisfy the adverse employment element of her prima facie case requirement because it offered her an equivalent position as the F & B Manager position. Further, Columbia Sussex contends it has come forth with a legitimate, nondiscriminatory reason for not rehiring plaintiff because she

---

**58.** 29 C.F.R. § 825.218(a).

**59.** 29 C.F.R. § 825.218(c).

abandoned her job by failing to return to work on May 10, 2002 as requested. Finally, Columbia Sussex argues that the same actor inference precludes the Court from finding retaliation in this case. Under the same actor inference, if the same actor takes a positive employment action towards an employee after that employee engages in protected activity, any inference of retaliation dissipates.[60] Because Schwartz offered plaintiff the F & B Manager position when plaintiff wanted to return to work, Columbia Sussex argues that her positive employment action precludes a finding of earlier retaliation.

In opposition to defendant's motion for summary judgment on the retaliation claim, plaintiff argues that she has satisfied the adverse employment action requirement of her prima facie case because she was terminated on May 7, 2002 by Columbia Sussex, and termination is an ultimate employment decision under Fifth Circuit jurisprudence.[61] Plaintiff also argues there are factual issues which preclude summary judgment because Schwartz first set May 10, 2002 as the pivotal deadline in correspondence with plaintiff, but then unilaterally moved the date up to May 6–7. Finally, plaintiff contends that issues of fact exist as to the timing of defendant's decision because plaintiff was fired within 10 days of requesting FMLA leave.

Plaintiff also argues that there is evidence in the record that create issues of fact as to the pretext element. First, plaintiff argues Columbia Sussex has not put forth any evidence in the record, such as financial records, to support its finding that reinstating plaintiff would have caused it substantial and grievous economic injury. Columbia Sussex responds that plaintiff never requested such records.

Second, plaintiff says there are other factual issues as to Columbia Sussex's finding of substantial and grievous economic injury because plaintiff's replacement had not even begun working for Columbia Sussex on June 21, 2002, the day plaintiff returned to work and asked for her old job back. Plaintiff's replacement began work on June 24, but Columbia Sussex contends that the replacement had already been hired, but was in the process of relocating his family from New Orleans and completing the two-week notice he was required to give on his previous job.

Finally, plaintiff argues that Schwartz's own words from her deposition create factual issues as to the retaliation claim. In her deposition, Schwartz said she would not rehire plaintiff today if she applied to Columbia Sussex because she is suing her. Columbia Sussex contends such a response is a stray remark, and is irrelevant because Schwartz was not the ultimate decision maker, nor did plaintiff actually reapply for the Executive Housekeeper position and be rejected for the position.

In the past, FMLA retaliation claims would have been analyzed under the *McDonnell Douglas* burden shifting framework that was also applicable to Title VII claims.[62] In such a framework, the

---

**60.** *Brady v. Houston Indep. Sch. Dist.,* 113 F.3d 1419, 1424 (5th Cir.1997).

**61.** The continued discrepancy between whether plaintiff was fired or abandoned her job is not an issue of fact that precludes summary judgment because plaintiff fails to support her belief that she was fired with any evidence from the record other than her own speculative assertions.

**62.** *See Hunt v. Rapides Healthcare System, LLC,* 277 F.3d 757, 768 (5th Cir.2001); *Chaffin v. John H. Carter Co., Inc.,* 179 F.3d 316, 320–21 (5th Cir.1999). *See also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

plaintiff bore the burden of proving that the defendant's actions were motivated by intentional discrimination. In order to establish a prima facie case, the plaintiff then had to establish: (1) that she is covered by the FMLA; (2) that she suffered an adverse employment decision; and either (3a) that she was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because of the plaintiff's request for leave.[63] After proving her prima facie case, the burden then shifted to the employer to articulate a legitimate non-discriminatory or non-retaliatory reason for the employment decision. If the employer did this, the plaintiff then had to show by a preponderance of the evidence that the employer's reason was a pretext for discrimination or retaliation.[64] Plaintiffs could establish pretext either by evidence of disparate treatment or by a showing that the employer's proffered explanation is false or unworthy of credence.[65]

Recent decisions by the United States Supreme Court, in *Desert Palace, Inc. v. Costa*,[66] and the Fifth Circuit, in *Rachid v. Jack In The Box, Inc.*,[67] now make the traditional *McDonnell Douglas* analysis questionable and inapplicable in adjudicating Columbia Sussex's motion for summary judgment on the FMLA retaliation claim. In *Desert Palace*, the Supreme Court held if an employee demonstrates with direct or circumstantial evidence that discrimination was a motivating factor in an employment decision, the employer must prove that it would have made the same decision in the absence of discrimination to avoid damages.[68] Essentially, the Supreme Court changed prior case law that required direct evidence of discrimination to invoke a mixed-motives analysis, and instead made the mixed-motives analysis applicable in all employment discrimination cases. In the aftermath of *Desert Palace*, some courts and academics said that *Desert Palace* replaced the traditionally used *McDonnell Douglas* analysis with the mixed-motives analysis in all employment discrimination cases at the summary judgment stage.[69] Although this question went unanswered for some time by the Fifth Circuit, that Court addressed the issue *Rachid*.

■ In *Rachid*, the Fifth Circuit held that *Desert Palace* modified the traditional *McDonnell Douglas* analysis in ADEA cases such that a plaintiff can proceed on a mixed-motives theory even without direct evidence of discrimination.[70] It replaced the traditional *McDonnell Douglas* analysis with what the Court called a modified *McDonnell Douglas* analysis. The Fifth

---

**63.** See *Bocalbos v. National Western Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir.1998), *cert. denied*, 528 U.S. 872, 120 S.Ct. 175, 145 L.Ed.2d 148 (1999).

**64.** *Id.; Oswalt v. Sara Lee Corp.*, 889 F.Supp. 253, 259 (N.D.Miss.1995)(Biggers, J.).

**65.** *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir.2003).

**66.** 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003).

**67.** 376 F.3d 305 (5th Cir.2004).

**68.** *Desert Palace*, 539 U.S. at 101, 123 S.Ct. at 2155.

**69.** See e.g. *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 286 (4th Cir.2004). *See also* William R. Corbett, McDonnell Douglas, 1973–2003, May You Rest In Peace, 6 U. Pa. J. Lab. & Emp. L.1999 (2003) and Jeffrey A. Van Detta, "Le Roi Est Mort; Vive Le Roi": An Essay On The Quiet Demise Of *McDonnell Douglas* and the Transformation of Every Title Vii Case After *Desert Palace, Inc. v. Costa* Into a Mixed-Motives Case, 52 Drake L.Rev. 71 (2003).

**70.** *Rachid*, at 316.

Circuit described the requirements of the modified *McDonnell Douglas* analysis as follows:

> Under this integrated approach, called, for simplicity, the modified *McDonnell Douglas* approach: the plaintiff must still demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, "the plaintiff must then offer sufficient evidence to create a genuine issue of material fact 'either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive[s] alternative).' ...If a plaintiff demonstrates that age was a motivating factor in the employment decision, it then falls to the defendant to prove "that the same adverse employment decision would have been made regardless of discriminatory animus. If the employer fails to carry this burden, plaintiff prevails." [71]

It should be noted that the Fifth Circuit held that *Desert Palace* applied to the ADEA because, just as the Supreme Court reasoned in *Desert Palace* regarding Title VII, the ADEA, on its face, does not require that a plaintiff make a heightened showing through direct evidence.[72] Thus, the continuing theme of both *Desert Palace* and *Rachid* is to look at the statutory text first, and determine whether the text requires a showing of direct evidence. Be-

cause the text of the FMLA does not require a plaintiff to make a heightened showing through direct evidence to prove a retaliation or discrimination, this Court concludes that *Desert Palace* and *Rachid* apply to plaintiff's FMLA retaliation claim.

■ Under the modified *McDonnell Douglas* analysis, a plaintiff still cannot defeat a motion for summary judgment if she cannot satisfy her prima facie case. Therefore, summary judgment is appropriate on plaintiff's FMLA retaliation claim because she is unable to show any genuine issue of material fact as to whether she suffered an adverse employment action or ultimate employment decision. Specifically, plaintiff has failed to produce any evidence to show that the defendant did not offer her reinstatement on June 21, 2002. As discussed above, the undisputed facts show that plaintiff was offered an equivalent position upon her return to the Baton Rouge Marriott. Even viewing the evidence in the light most favorable to plaintiff, the hotel's concern for the plaintiff and the action that the Baton Rouge Marriott took in order that the plaintiff could be returned to her same status at the Baton Rouge Marriott cannot be overlooked. Columbia Sussex raised the salary of the F & B Manager position to $41,000 so that plaintiff would not suffer any loss in salary. Further, the Baton Rouge Marriott placed plaintiff in a managerial role, as she had been before as the Executive Housekeeper, even though it had clearly followed the law in replacing plaintiff as Executive Housekeeper because of her key employee status. The evidence is clear that plaintiff was offered an equivalent position on June

---

**71.** *Id.* at 312 *citing Louis v. East Baton Rouge Parish School Bd.,* 303 F.Supp.2d 799, 801–04 (M.D.La.2003)(Polozola, J.)(To defeat a mixed-motives claim, once a plaintiff shows that the prohibited characteristic was a motivating factor, the defendant must demonstrate

that "it would have taken the same action in the absence of the impermissible motivating factor.").

**72.** *Id.* at 311 n. 8.

21, 2002 by the Baton Rouge Marriott. Thus, Columbia Sussex's motion for summary judgment on the FMLA retaliation claim should be granted as a matter of law under the facts of this case.

█ In the alternative, the Court also finds that Columbia Sussex's motion for summary judgment should be granted because no issues of material fact exist as to whether defendant was required to reinstate plaintiff to the Executive Housekeeper position because of her key employee position. As discussed above, it is undisputed that: (1) plaintiff was a key employee at the Baton Rouge Marriott; (2) Columbia Sussex complied with the FMLA regulations in notifying plaintiff that she was a key employee and of the consequences of that status; and, (3) reinstating plaintiff would have caused defendant substantial and grievous economic injury. Because of plaintiff's key employee status, Columbia Sussex had to replace her, or the continued successful operation and viability of the Baton Rouge Marriott would be questionable. Columbia Sussex gave plaintiff the opportunity to return to the Baton Rouge Marriott by May 10, 2002. It is undisputed that plaintiff did not return to work on that date. The fact that plaintiff's replacement did not actually start working at the hotel until June 24, 2002, three days after plaintiff's return to the Baton Rouge Marriott, is not a material fact that would preclude the Court from entering summary judgment. Plaintiff's key employee status and her inability to return to work when the Baton Rouge Marriott needed her had forced defendant to hire her replacement. It does not matter that plaintiff's replacement had not yet begun working. It is clear from the record that he had already been hired. What does matter is that a replacement had been hired, and for the defendant have two Executive Housekeepers on the payroll at a $41,000 salary each would have caused the Baton Rouge Marriott substantial and grievous economic injury. Accordingly, Columbia Sussex was protected by FMLA regulations in not reinstating plaintiff to the Executive Housekeeper position, and its motion for summary judgment on the FMLA retaliation claim should also be granted for this reason.

The Court acknowledges that the timing between plaintiff's taking FMLA leave and not being reinstated to the Executive Housekeeper position could raise issues as to whether plaintiff was retaliated against. The Court also notes that some of Schwartz's remarks regarding plaintiff's parents being placed in a nursing home or that she would not rehire plaintiff today could be viewed by a fact finder as insensitive remarks that probably should not have been made. However, the Fifth Circuit's decision in *Rachid* confirms that, like the traditional *McDonnell Douglas* analysis, in the modified *McDonnell Douglas* case, a plaintiff cannot even get to the pretext or mixed-motives stage of her case if she cannot satisfy her initial burden of proving a prima facie case of unlawful retaliation.[73] Here, plaintiff did not produce evidence to create genuine issues of material fact as to whether she suffered an adverse employment action or ultimate employment decision. Therefore, the Court has no choice but to grant Columbia Sussex's motion for summary judgment on the FMLA retaliation claim.

### c. Punitive Damages and Emotional Distress

█ Although the Court has granted defendant's summary judgment, the Court will also rule on the remaining issues raised in defendant's motion.

73. *Rachid,* at 312.

Columbia Sussex argues the Court should dismiss any of plaintiff's claims for punitive damages and emotional distress because punitive damages or damages for emotional distress are not recoverable under the FMLA. In her brief, plaintiff failed to oppose Columbia Sussex's argument on this point and the Court must and does presume that plaintiff has no opposition to this argument.

It is clear that nominal damages are not available under the FMLA because the statutory language of the FMLA specifically limits recovery to actual monetary losses.[74] Similarly, the FMLA does not provide for the recovery of punitive damages or damages for emotional distress. Therefore, plaintiff's request for punitive damages or damages for emotional distress are hereby dismissed as a matter of law.

### d. Individual Liability of a Supervisor

Columbia Sussex also argues that Schwartz should be dismissed as a defendant in this lawsuit because she is not an employer under the FMLA. In the alternative, Columbia Sussex contends that Schwartz did not have the authority to make a final decision on plaintiff's requested leave because it had to be approved by Columbia Sussex's human resource department. Thus, Schwartz did not have sufficient operational control over plaintiff to the extent that Schwartz can be named as a defendant in this lawsuit. Plaintiff failed to oppose Columbia Sussex's argument on this point as well and the Court assumes

plaintiff has no opposition to defendant's motion to dismiss Schwartz in her individual capacity. However, the Court must note that most courts that have decided the issue have determined that supervisors can be held individually liable for FMLA violations.[75] However, the test for liability is whether the defendant had the ability to control, in whole or in part, whether the plaintiff could take a leave of absence and return to the position.[76] As noted earlier, the evidence submitted by Columbia Sussex establishes that Schwartz was bound by the decisions made by the human resources department of Columbia Sussex with respect to plaintiff's FMLA leave request. Since plaintiff has failed to rebut any of this evidence, summary judgment is granted dismissing Schwartz as a defendant in this lawsuit.

### 3. State Law Claims

To the extent that plaintiff's complaint states any claims under state law, the Court declines to exercise supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367(a). These claims are dismissed without prejudice.

### C. Conclusion

For the reasons set forth above, the defendants' motion for summary judgment is granted.

Therefore:

IT IS ORDERED that judgment be entered in favor of the defendants, Columbia Sussex Corp., d/b/a Baton Rouge Marriott,

---

74. *Walker v. United Parcel Service, Inc.*, 240 F.3d 1268, 1278 (10th Cir.2001).

75. Charles R. Richey, Manual on Employment Discrimination Law and Civil Rights Actions in the Federal Courts § 9:36 (1986) at 9–26 *citing Stubl v. T.A. Systems, Inc.*, 984 F.Supp. 1075(E.D.Mich.1997)(Rosen, J.); *Knussman*

*v. State of Maryland*, 935 F.Supp. 659(D.Md.1996)(Black, J.).

76. Charles R. Richey, Manual on Employment Discrimination Law and Civil Rights Actions in the Federal Courts § 9:36 (1986) at 9–26 *citing Johnson v. A.P. Products, Ltd.*, 934 F.Supp. 625 (S.D.N.Y.1996)(Parker, J.).

Janet Beck Schwartz, in her official capacity as General Manager of the Baton Rouge Marriott, and XYZ Insurance Company, on plaintiff's FMLA interference claim, and that plaintiff's FMLA interference claim be dismissed with prejudice.

IT IS FURTHER ORDERED that judgment be entered·in favor of the defendants, Columbia Sussex Corp., d/b/a Baton Rouge Marriott, Janet Beck Schwartz, in her official capacity as General Manager of the Baton Rouge Marriott, and XYZ Insurance Company, on plaintiff's FMLA retaliation claim, and that plaintiff's FMLA retaliation claim be dismissed with prejudice.

IT IS FURTHER ORDERED that judgment be entered in favor of the defendants, Columbia Sussex Corp., d/b/a Baton Rouge Marriott, and Janet Beck Schwartz, in her official capacity as General Manager of the Baton Rouge Marriott, on its motion to dismiss any of plaintiff's demands for punitive damages or damages for emotional distress under the FMLA, and that plaintiff's demands for punitive damages or damages for emotional distress under the FMLA be dismissed with prejudice.

IT IS FURTHER ORDERED that judgment be entered in favor of the defendant, Janet Beck Schwartz, in her official capacity as General Manager of the Baton Rouge Marriott, and that Janet Beck Schwartz be hereby dismissed from this lawsuit as a defendant.

IT IS FURTHER ORDERED that any state law claims asserted by plaintiff in her complaint be dismissed without prejudice.

IT IS FURTHER ORDERED that the XYZ Insurance Company be dismissed since it cannot be recognized as a defendant herein.