### John FORTUNATO, Plaintiff

v.

### COOLEY DICKINSON HOSPITAL, INC., Defendant.

#### C.A. No. 07–30170–MAP.

United States District Court, D. Massachusetts.

Feb. 11, 2009.

Jeffrey S. Morneau, Donohue, Hyland & Donohue, PC, Holyoke, MA, for Plaintiff.

Kathleen E. Sheehan, Keyes & Donnellan, Springfield, MA, for Defendant.

### MEMORANDUM AND ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT (Dkt. Nos. 14 and 19)

PONSOR, District Judge.

## I. INTRODUCTION

Plaintiff John Fortunato, an insulin dependent diabetic, brought this employment discrimination suit against his former employer, Defendant Cooley Dickinson Hospital ("CDH"), alleging that CDH wrongfully terminated him from his position as the driver of the Blood Mobile in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), and Mass. Gen. Laws ch. 151B[1] after it learned that he was unable to obtain a medical card from federal or state authorities. The outcome of this case depends on whether federal or state law requires that drivers of vehicles like CDH's Blood Mobile possess a medical certification not required by operators of ordinary passenger vehicles. Having reviewed the pertinent statutes and regulations, this court finds that under Massachusetts law anyone driv-

---

1. Plaintiff's complaint had seven counts. Plaintiff is not seeking or opposing summary judgment as to the seventh count which alleged invasion of privacy. Count I asserts failure to accommodate in violation of the ADA, Count II asserts failure to accommodate in violation of Mass. Gen. Laws ch. 151B, Count III asserts termination in violation of the ADA, Count IV asserts termination in violation of the Mass. Gen. Laws ch. 151B, Count V asserts that CDH required a medical exam and/or made a disability related inquiry in violation of the ADA, and Count VI asserts that CDH required a medical exam and/or made a disability related inquiry in violation of Mass. Gen. Laws ch. 151B.

ing the CDH's Blood Mobile was required to have a medical certification issued by the Department of Transportation ("DOT") or a waiver issued by the Commonwealth. Since Plaintiff had neither, the court will allow Defendant's Motion for Summary Judgment and deny Plaintiff's.

## II. *BACKGROUND*

The facts are largely undisputed. In 2004 CDH hired Fortunato to drive its new Blood Mobile, which weighed more than 10,001 pounds. At the time it hired Fortunato, CDH believed that pursuant to Massachusetts law, the driver simply needed a valid driver's license in order to legally operate the Blood Mobile. As a result CDH prepared a job description which stated that a successful candidate would need to have a high school diploma or equivalent, hold a Massachusetts driver's license, have a safe driving record, and possess six months to one year of experience as an employed truck driver.

Fortunato applied for the driver position. During the interview he was not told that he would need to obtain a DOT medical certification or a waiver from the Commonwealth. CDH hired Fortunato to be the Blood Mobile driver in September 2004. Prior to beginning his employment he received a pre-employment medical examination at CDH at which time CDH learned he was an insulin dependant diabetic. Fortunato only drove the Blood Mobile within Massachusetts. It is undisputed that he performed his job well.

In early January 2006, Fortunato had knee surgery and was out of work for about three weeks before being cleared by his surgeon to work without restrictions. After being cleared, Fortunato had a return-to-work physical arranged through CDH. This type of physical is required of all employees who miss more than three days of work. Jason Loftus, a Physician Assistant, conducted the return-to-work physical during which he asked Plaintiff about his insulin dependant diabetes. Fortunato went for a second physical examination on March 30, 2006. At that time Loftus completed the Medical Examination Report published at 49 C.F.R. § 391.43. At some point in early 2006 CDH made its determination that the driver of the Blood Mobile needed a DOT medical certification or a state waiver and requested that Plaintiff obtain such a card or waiver. Due to his insulin dependant diabetes, Fortunato was not able to get either, and he was subsequently terminated from his job at CDH.

## III. *DISCUSSION*

Plaintiff has set out three claims: failure to accommodate; wrongful termination; and impermissible inquiry about, and/or performance of medical exams related to, his disability. *Gillen v. Fallon Ambulance Serv.*, 283 F.3d 11, 20 n. 5 (1st Cir.2002) ("Although we write in terms of the ADA, our comments apply with equal force to the appellant's claim under its state-law counterpart, Mass. Gen. Laws. ch. 151B, § 4. That statute tracks the ADA in virtually all respects."). The necessary qualifications for a particular job play a central role in the evaluation of each of these claims.

◼ A plaintiff must demonstrate that he or she is a qualified individual within the meaning of the ADA in order to make out a claim for either failure to accommodate or wrongful termination. *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 264 (1st Cir.1999) (requiring a plaintiff to furnish "significantly probative evidence that he is a qualified individual with a disability" in order to survive a motion for summary judgment on his failure-to-accommodate claim); *Mulloy v. Acushnet Co.*, 460 F.3d 141, 145 (1st Cir.2006) (stat-

ing that a plaintiff in a wrongful termination case brought under the ADA must prove three elements including that the plaintiff "was a qualified individual able to perform the essential functions of the job" with or without reasonable accommodation).

■ Where a plaintiff alleges that an employer violated the ADA by impermissibly inquiring about a disability or administering a medical examination, the plaintiff must show that the inquiry or examination was not "job-related and consistent with business necessity." 29 C.F.R. 1630.14(c) (2008). Employers are specifically permitted to "make inquiries into the ability of an employee to perform job-related functions." *Id.* Thus, if CDH is correct that federal or state law requires that the driver of the Blood Mobile have a DOT medical certification or a waiver from the Commonwealth, Fortunato's inability to get either made him unqualified to do his job, and inquiries related to that ability would have been permissible. *Cf. Fiumara v. President & Fellows of Harvard College,* 526 F.Supp.2d 150, 156 (D.Mass. 2007) (finding that a plaintiff was not a qualified individual because his position required that he have a commercial driver's license and he became unable to maintain his license).

Under federal law, those "who drive commercial motor vehicles as, for, or on behalf of motor carriers," must be medically certified to be physically qualified to operate a commercial motor vehicle ("CMV"). 49 C.F.R. §§ 391.1, 391.41 (2008). For the purposes of federal law, a CMV is "any self-propelled or towed motor vehicle used on a highway in interstate commerce to transport passengers or property when the vehicle ... [h]as a gross vehicle weight rating or gross combination weight rating, or gross vehicle weight or gross combination weight, of

4,536 kg (10,001 pounds) or more, whichever is greater." *Id.* § 390.5. Plaintiff argued that the driver of the Blood Mobile did not need to have a DOT medical certificate because the Blood Mobile was only operated intrastate and thus was not a CMV for purposes of federal law. He further argued that under Massachusetts law the driver of the Blood Mobile was not required to have a medical certification or a state waiver.

As to the direct applicability of federal law, Plaintiff is correct; the Blood Mobile is operated only intrastate and is therefore not a CMV for federal purposes. However, Massachusetts has adopted significant portions of the Federal Motor Carrier Safety Regulations ("FMCSR"), including the medical certification requirement. The Commonwealth provides waivers to the medical certification requirement for certain limited categories of "[d]rivers of vehicles engaged only in intrastate commerce." 540 Mass.Code Regs. 14.04 (2008). Massachusetts adopted the federal regulations in order to govern "motor carrier safety ... upon the ways of the Commonwealth of Massachusetts in both intrastate and interstate commerce." 540 Mass.Code Regs. 14.03 (2008).

During the hearing on these motions, Plaintiff argued that because Massachusetts intended "that the term 'commercial motor vehicle' as used in 540 Mass.Code Regs. 14.00 shall have the same meaning as in Part 390.5 of Title 49, Code of Federal Regulations," any vehicle that did not qualify as a CMV under the federal definition would not be considered a CMV by Massachusetts. 540 Mass.Code Regs. 14.02 (2008). Since federal law defined a CMV only as operating interstate, Plaintiff's argument ran, the fact that the Blood Mobile only operated *intrastate* meant it was not a CMV under state or federal law.

A literal reading of this isolated section of the Massachusetts regulations might seem to support Plaintiff, but one purpose of the Massachusetts regulations is clearly to apply the language of the federal regulations to vehicles traveling intrastate. Indeed, the waiver provisions would be pointless if the Massachusetts regulations only covered those vehicles also regulated federally.

Following the hearing, Plaintiff advanced a new argument in his supplemental memorandum. He conceded that under Massachusetts law the Blood Mobile was a CMV, but argued that the regulations adopting the FMCSR medical certification requirements only applied to drivers working for certain types of carriers and that Defendant was not one of those types of carriers. Motor carriers operating CMVs, common carriers, contract carriers, private carriers of property, and private carriers of passengers are all explicitly subject to the Massachusetts regulations. 540 Mass.Code Regs. 14.02(1) (2008). These categories largely overlap. Motor carriers are defined at Mass. Gen. Laws ch. 159B, § 2, as including common carriers by motor vehicle, contract carriers by motor vehicle, agricultural carriers by motor vehicle, private carriers by motor vehicle, and interstate carriers by motor vehicle. According to Plaintiff, Defendant was not included in any applicable definition.

As to most categories, Plaintiff's analysis was correct. However, Defendant needed to fit into only one category for the regulations to apply to it, and Defendant did fit the definition of a private carrier. A private carrier included any person who was not a common, contract, or agricultural carrier and who transported property owned, leased, or held by the person in order to sell, lease, or rent the property or "in the furtherance of any commercial enterprise." Mass. Gen. Laws ch. 159B, § 2 (2008).[2]

Plaintiff argued that Defendant was not a private carrier, because it did not sell donated blood and its blood donation activities did not further a *commercial* enterprise. The record is silent as to whether Defendant sold any blood or blood products. Even if it did not, however, the Massachusetts Appeals Court declined to read "commercial" as meaning "for-profit" when that term was used elsewhere in Mass. Gen. Laws ch. 159B, § 2. The court specifically stated that the term commercial was "not used in contradistinction to 'governmental' or 'non-profit,'" but rather was used to distinguish "commercial vehicles" from "passenger vehicles." *Pruiss v. Springfield,* 21 Mass.App.Ct. 960, 488 N.E.2d 799, 800 (1986). The reasoning used in that case—that disparate safety regulations based on the tax-status of the operator "would have no relevance to the public safety purpose" of the statute—applies equally well here. *Id.* The Blood Mobile was a large vehicle being operated to further Defendant's enterprise, regardless of whether it generated profit. The risks posed if its driver lacked proper certification did not depend on Defendant's tax-status. In sum, the conclusion that the Blood Mobile was the type of vehicle Massachusetts seeks to regulate within the category of private carriers is inescapable.

## IV. CONCLUSION

It is difficult to reach the conclusion required by the facts and law here with much pleasure. Defendant knew Plaintiff had diabetes when he was hired and it is undisputed that while working for Defen-

---

**2.** Plaintiff's citation to *Commerce Ins. Co. v. Ultimate Livery Serv.,* 452 Mass. 639, 897 N.E.2d 50, 53 n. 4 (2008), for a narrower definition is misplaced. In *Commerce* the court did not define the full scope of the term private carrier, but simply distinguished the defendant's business from that of a common carrier.

dant Plaintiff's diabetes did not prevent him from doing his job well. Nevertheless, having reviewed the relevant statutes and regulations, this court must reluctantly conclude that Massachusetts law requires the driver of Defendant's Blood Mobile to carry either a valid DOT medical certification or a waiver from the Commonwealth. Since it is undisputed that Plaintiff was unable to obtain either, Defendant had no choice but to terminate him. Given these facts, Plaintiff cannot demonstrate that he was a qualified handicapped person, a necessary element of both his failure to accommodate and wrongful termination claims. Nor can he show that Defendant's inquiry about his ability to obtain a DOT medical card or waiver were not job-related and consistent with business necessity, an element of his impermissible inquiry claims. Therefore, Defendant's Motion for Summary Judgment (Dkt. No. 14) is hereby ALLOWED, and Plaintiff's Motion for Summary Judgment (Dkt. No. 19) is hereby DENIED.

The Clerk is ordered to enter judgment for Defendant; the case may now be closed.

It is So Ordered.